# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

December 30, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

ANALYN ROJO CANTRELL, )
)
    Petitioner/Appellant, )
)    Appeal No.
)    M1998-00536-COA-R3-CV
VS. )
)    Williamson Chancery
)    No. II-P-98-2015
IN THE MATTER OF: )
ESTATE OF )
JERRY A. CANTRELL, Deceased, )
)
    Respondent/Appellee. )

APPEAL FROM
THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE RUSS HELDMAN, CHANCELLOR

PHILLIP NEWMAN
401 Church Street
Franklin, Tennessee 37064
    Attorney for Petitioner/Appellant

JUDY OXFORD
136 Fourth Avenue South
Franklin, Tennessee 37064
    Attorney for Respondent/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CRAWFORD, P.J., W.S.
COTTRELL, J.

**O P I N I O N**

This appeals concerns the enforceability of a prenuptial agreement. On appeal the appellant challenges the trial court's application of the Dead Man's Statute, Tenn. Code Ann. § 24-1-203, to exclude parts of her testimony, and the court's finding that she entered into the agreement freely, knowingly, and after a full and fair disclosure of the extent and value of her husband's assets. We affirm the trial court.

**I.**

Jerry A. Cantrell of Franklin, Tennessee died on November 11, 1997, survived by his widow, Analyn Rojo Cantrell, their ten-month-old son, and five adult children by a former marriage. Mr. Cantrell had a will, but he had not revised it after his marriage or the birth of his son; so for the purposes of this proceeding, he is considered to have died intestate.

On January 7, 1998, an adult daughter petitioned the Chancery Court of Williamson County to be appointed administratrix of the estate. She alleged that the widow had waived any right in the estate, including the right to administer the estate, by the execution of a prenuptial agreement. The court issued letters of administration to the daughter.

On May 18, 1998, the widow petitioned the Chancery Court for a year's support, the award of exempt property to her, and an elective share of the estate. The administratrix answered the petitions and raised as a defense the

provisions of the prenuptial agreement. The petitions were heard on September 1, 1998, and taken under advisement by the chancellor. On September 23, 1998, the widow asked the court to appoint a guardian ad litem for the minor child. The court announced its decision on November 10, 1998, finding that the widow entered into the prenuptial agreement after a full and fair disclosure of the decedent's assets, and without being under any improper external pressure or influence. Therefore, under the provisions of the agreement, the widow was not entitled to an elective share, exempt property, or a year's support. The court did appoint a guardian ad litem for the minor child.

## II.

### IS IT A FINAL JUDGMENT?

The appellee asserts that the chancellor's order is not final because it does not dispose of all the claims of all the parties. *See* Rule 3(a), Tenn. R. App. Proc. This allegation is based on the fact that the chancellor appointed a guardian ad litem and directed him to file appropriate pleadings for the child.

It is true that the appointment of a guardian ad litem suggests that there are potential claims concerning the child and the estate. But, since this is an estate in probate, there may be numerous outstanding claims involving many other parties. If this were simply a claim against the estate, the denial of that claim would be appealable immediately without waiting for the entire estate to be settled. *See* Tenn. Code Ann. § 30-2-315(b). However, the petitions for a year's support, exempt property, and an elective share, are dealt with in separate sections of the Code. *See* Tenn. Code Ann. § 30-2-101 (exempt property); Tenn.

Code Ann. § 30-2-102 (year's support); and Tenn. Code Ann. § 31-4-101, et seq. (elective share). In only one case did the legislature anticipate an appeal. That was in the case of a year's support, and the code provides that if the amount set by the court is not satisfactory to the interested parties, an appeal may be made to "the appropriate court in accordance with § 30-2-609." *See* § 30-2-102(f). Neither section mentions a time limit or makes the order immediately appealable.

We are convinced, however, that Rule 3(a) does not prevent the immediate appeal of the chancellor's order in this case. The widow's demands are like any other claims against the estate. They therefore fall within the provisions of Tenn. Code Ann. § 30-2-315(b). By this section, ordinary claimants may appeal immediately where their claims are denied, without awaiting the disposition of all the other claims. A widow seeking a year's support should not be in a worse position than an ordinary claimant. Therefore, we think the chancellor's order was a final judgment for the purpose of this appeal.

## III.

### THE PRENUPTIAL AGREEMENT

The parties married in Bowling Green, Kentucky on March 3, 1997. They executed the prenuptial agreement on February 28, 1997 in Louisville, Kentucky where Mr. Cantrell owned some property. Each party waived any rights he/she would acquire in the estate of the other by marriage. The agreement specifically disclaimed a right to a distributive share, the right to administer the other's estate, a widow's or widower's allowance, and exempt property. The

agreement also provided that it should be construed and enforced in accordance with the laws of the Commonwealth of Kentucky.

Ms. Cantrell is a native of the Philippines, holding a degree in elementary education. She worked as a maid and tutor in Singapore and Vancouver, British Columbia. In 1994, her picture appeared in a mail order bride catalog, and she received a letter from Mr. Cantrell. They began to correspond and to talk on the telephone daily. In October of 1994, Mr. Cantrell went to Vancouver, where the parties lived together for about a year before moving to Mr. Cantrell's home in Franklin.

Their child was born on January 15, 1997, and the parties decided to get married. Mr. Cantrell asked Ms. Rojo to sign a prenuptial agreement. Since Mr. Cantrell owned some property in Louisville and had an attorney there, he employed the attorney to prepare the agreement. He also arranged for another attorney to advise Ms. Rojo. They went to her attorney's office on February 27, where Ms. Rojo spent about thirty minutes alone with her adviser. The attorney told her that he needed to do some research on the effect of Tennessee law, so the parties left and returned the next day. She spent another thirty minutes alone with the attorney while Mr. Cantrell prepared a list of his assets to be attached to the agreement. Ms. Cantrell testified that she considered the list for about three seconds before signing the agreement.

Kentucky law with respect to prenuptial agreements is not appreciably different from Tennessee law. Such agreements are valid if they are executed voluntarily after full disclosure of the parties' respective assets and

marital property rights. *Gentry v. Gentry*, 798 S.W.2d 928 (Ky. 1990); *compare* Tenn. Code Ann. § 36-3-501 and *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn. 1996). The Kentucky courts also examine whether the facts and circumstances have changed since the agreement was executed, so as to make its enforcement unfair and unreasonable. *Gentry* at 936. *See also Edwardson v. Edwardson*, 798 S.W.2d 941 (Ky. 1990).

### A. DISCLOSURE

The appellant argues that the trial judge's finding that she did have a full and fair disclosure of the decedent's property before signing the agreement is against the preponderance of the evidence. *See* Rule 13(d), Tenn. R. App. Proc. She testified, however, that she received the list prior to signing the agreement. The list substantially conforms to the inventory of his estate filed after Mr. Cantrell's death. Although Ms. Cantrell did not bother to carefully read the list (according to her testimony) it cannot be said that the extent of Mr. Cantrell's assets was not disclosed to her. Her lack of interest in the details of the disclosure should not be used as a reason to invalidate the agreement. *See Wilson v. Moore*, 929 S.W.2d 367 (Tenn. Ct. App. 1996). In addition, the parties had lived together for over two years prior to the marriage, during which time she must have acquired some knowledge of Mr. Cantrell's affairs. *See Kahn v. Kahn*, 756 S.W.2d 685 (Tenn. 1988); *Randolph v. Randolph*, 937 S.W.2d 815 (Tenn. 1996).

We cannot say that the evidence preponderates against the chancellor's finding.

## B. DURESS

The appellant also disputes the chancellor's finding that she entered into the agreement voluntarily. She attempted to testify that Mr. Cantrell threatened to send her back to the Phillippines without her baby if she did not sign the agreement. The chancellor excluded that evidence on the basis of the Dead Man's Statute, Tenn. Code Ann. § 24-1-203:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. Provided, if a corporation be a party, this disqualification shall extend to its officers of every grade and its directors.

One of the leading cases interpreting this statute is *Baker v. Baker*, 142 S.W.2d 737 (Tenn. Ct. App. 1940) which also involved a prenuptial agreement. The *Baker* court discussed the purpose of the statute, and concluded that it did not apply to cases where the transaction about which the testimony was offered did not increase or diminish the decedent's estate but concerned only the manner in which the assets will be distributed. 142 S.W.2d at 744. *See also Petty v. Estate of Nichols*, 569 S.W.2d 840 (Tenn. Ct. App. 1977); *Newark Ins. Co. v. Seyfert*, 392 S.W.2d 336 (Tenn. 1964). In this case Ms. Cantrell asserts that she is among the class of persons that would take a share of the estate if the decedent died intestate; therefore, her claims would not decrease the estate but only affect the way the estate will be distributed.

We think, however, that the demand for a year's support and for the exempt property definitely have the effect of decreasing the estate to be distributed. An argument could be made to the contrary about the elective share, but that distinction was never presented to the chancellor. We therefore hold that the chancellor properly sustained the objection to the appellant's testimony based on the Dead Man's Statute.

There is no other proof about the circumstances surrounding the execution of the agreement. Therefore, the evidence does not preponderate against the chancellor's finding that Ms. Cantrell signed the agreement voluntarily.

The judgment of the trial court is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Analyn Rojo Cantrell.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

_____
PATRICIA J. COTTRELL, JUDGE