558 S.E.2d 264

**Mary F. HARDEE, Respondent,**

v.

**Jerry N. HARDEE, and Hardee Construction Company, Inc., Appellants.**

**No. 3417.**

Court of Appeals of South Carolina.

Heard Sept. 5, 2001.
Decided Dec. 10, 2001.
Rehearing Denied Jan. 17 and Jan. 23, 2002.

Harry C. Wilson, Jr., of Lee, Erter, Wilson, Holler & Smith, of Sumter, for appellants.

James T. McLauren, C. Dixon Lee, III, both of McLauren & Lee and Jan L. Warner, all of Columbia, for respondent.

HEARN, Chief Judge.

Jerry Hardee (Husband) appeals from a family court order concerning the enforcement of a premarital agreement, equitable distribution of property, alimony, and attorney fees. We affirm in part and reverse in part.

## FACTS

Mary Alessandro Hardee (Wife) met Husband while she was working for the attorney representing Husband in his second divorce. The two began dating, and Wife moved into Husband's home in July 1987. Shortly after the couple began living together, Wife reduced her hours at work, sold her home, and terminated her car lease.

In December 1988, Husband proposed to Wife. Wife accepted, and the couple began planning a March wedding. Wife testified that they joked about a premarital agreement but that Husband never mentioned having her sign one until after he proposed. Around February 1, 1989, Husband presented Wife with a premarital agreement. In the draft agreement, each party waived all rights to the other's property in the event of divorce, as well as any rights to alimony or attorney fees. The agreement also contained a clause providing that Husband would pay Wife $3,000 for each year of their marriage should they divorce. Wife took the agreement to her attorney, who was also her long-time employer, for his review. The attorney and another lawyer in his firm recommended Wife not sign it.

The parties continued to negotiate. After reviewing the final agreement, Wife's attorney again advised her not to sign. He testified that he thought the agreement was unfair and that he told her it was a "terrible agreement," considering her health problems and she would be "left out in the cold" if the marriage failed.[1] Wife testified that she was represented by an attorney when the agreement was executed and that he fully explained the agreement's terms to her.

Despite Wife's attorney's advice, the parties executed an agreement on February 22, 1989, providing: "That each party, in the event of separation or divorce, shall have no right against the other by way of claims for support, alimony, attorney's fees, costs, or division of property, except as specifically stated hereinafter." The agreement also required Husband to pay Wife $5,000 for each year of their marriage and $2,000 for moving expenses on separation. Husband and Wife each completed financial statements which were attached to the agreement. At that time, Husband's assets totaled $1,536,642, and Wife showed assets of $48,200.

Following the wedding, Husband continued working as the owner of Hardee Construction Company, and Wife worked part time as a paralegal until 1991 when she and Husband bought a diet business for her to operate. In 1993, the parties sold the business, and Wife did not work outside the home for the rest of the marriage.

Wife alleged Husband abused her physically and emotionally. She testified to several incidents, including an evening when Husband allegedly hit her in the eye with his fist. Husband denied that he physically abused Wife and maintained that her eye injury resulted from a collision with a door frame. Wife also contended Husband committed adultery. In 1990, a young woman and her husband confronted Wife and accused Husband of having an affair with the young woman. In June 1995, Wife learned Husband was having another

---

1. Before marrying Husband, Wife suffered from diabetes and sponge kidney disease. Wife's health has continued to deteriorate. At the time of the divorce proceedings, Wife used an insulin pump to control her diabetes, and her primary physician had treated her for a variety of medical problems including diabetic mellitus, chest pain, anxiety, and diabetic neuropathy. Wife's physician also testified that Wife suffers from systemic lupus and cannot engage in gainful employment.

affair. Wife confronted Husband about the relationship, and Husband left the marital home. He admitted to the affair and continued the relationship after the parties separated.

Wife commenced this action seeking a divorce from Husband on the ground of adultery, spousal support, equitable apportionment of property, restraining orders, and attorney fees. Husband filed a motion to dismiss, an answer and counterclaim, and a motion for temporary relief. He asserted that the premarital agreement divested the family court of subject matter jurisdiction and barred Wife's claims. A temporary hearing was held and the family court issued an order granting Wife exclusive use of the marital home, the use of a car, and requiring Husband to pay Wife's health insurance premiums and $20,000.[2] The order also reserved jurisdiction to determine the validity of the parties' premarital agreement.

On Husband's motion, the family court bifurcated the issues in this action. An initial hearing was held to determine the impact of the premarital agreement. The family court found the provisions of the agreement relating to grounds for divorce void, the provisions waiving alimony and attorney fees invalid if found unconscionable at the time of enforcement in the later divorce hearing, and the provision regarding equitable division invalid with respect to property acquired during the marriage. The order reserved jurisdiction to determine alimony, equitable division, and attorney fees.

The family court then heard the case on its merits and issued a final decree and judgment of divorce for Wife on the statutory ground of adultery. Additionally, the order declared that the waivers of spousal support and attorney fees were unconscionable and void and that the agreement did not bar equitable division of property acquired during the marriage.

The family court found Wife totally disabled and unable to support herself and awarded her permanent periodic alimony of $4,250 per month. The order contemplated that Wife would pay her health insurance premiums from the alimony award. The family court ordered that property acquired by the parties during the marriage be divided with Husband receiving 70% of the assets and Wife receiving 30%. Lastly, the family

---

2. The relief awarded at the temporary hearing was not appealed.

court awarded Wife $85,000 in attorney fees and $15,000 in accounting fees.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Rutherford*, 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992); *Owens v. Owens*, 320 S.C. 543, 546, 466 S.E.2d 373, 375 (Ct.App.1996). However, this broad scope of review does not require us to disregard the family court's findings. *Stevenson v. Stevenson*, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Nor do we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## DISCUSSION

### I. Equitable Distribution of Property

Husband argues the family court erred in finding the premarital agreement did not bar the equitable division of property acquired by the parties during the marriage. We disagree.

The premarital agreement contains the following provisions governing the disposition of property:

1. That all properties of any kind or nature, real, personal or mixed, wheresoever the same may be located, which belongs to each party, shall be and forever remain the personal estate of the said party, including all interest, rents, and properties which may accrue therefrom *unless otherwise so stated in this Agreement.*

. . .

4. That each party, in the event of separation or divorce, shall have no right against the other by way of claims for support, alimony, attorney fees, cost, or division of property, *except as specifically stated hereinafter.*

. . .

7. It is specifically understood and agreed that should a separation or divorce occur between the parties, each of the parties would maintain all of their property as if the marriage had never occurred and each of the parties will have no interest whatsoever in the property of the other *except as hereinafter provided.*

. . .

9. **The provisions contained herein shall in no way affect the property, whether real, personal or mixed which shall be acquired by the parties, whether titled separately or jointly, subsequent to the date of this Agreement.**

10. . . . . Each party acknowledges that they shall have no right against the other by way of claim for support, alimony, attorney fees, costs or division of property, *except as stated within this agreement.*

(emphasis added).

Husband argues that paragraph 9 applies exclusively to property that he and Wife purchased jointly and that the agreement prevented the property in question from being classified as marital property subject to equitable division. Wife argues paragraph 9 indicates that all property acquired during the marriage is subject to equitable division, irrespective of title.

Marital property is defined as "all real and personal property which has been acquired by the parties during the marriage. . . ." S.C.Code Ann. § 20–7–473 (Supp.2000). This definition is subject to several exceptions, including "property excluded by written contract of the parties." S.C.Code Ann. § 20–7–473(4) (Supp.2000). Therefore, we must look to the agreement to determine whether the family court properly determined the property acquired during this marriage was marital.

Questions of construction, operation, and effect of domestic agreements are decided using the same rules as other contracts. *See Henderson v. Henderson,* 298 S.C. 190, 193, 379 S.E.2d 125, 127 (1989) (finding that interpretation of

separation agreements is "governed by the same general rules and provisions applicable to other contracts"). In construing a contract, "the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Heins v. Heins,* 344 S.C. 146, 158, 543 S.E.2d 224, 230 (Ct.App.2001). Moreover, this court must consider the contract in its entirety and employ a construction that gives effect "to the whole instrument and to each of its various parts and provisions...." *Yarborough v. Phoenix Mut. Life Ins. Co.,* 266 S.C. 584, 592, 225 S.E.2d 344, 349 (1976). We find the language of paragraph 9 plainly and unambiguously carves out an exception to the limitations imposed in paragraphs 1, 4, 7, and 10 and allows the equitable division of property acquired during the marriage. The agreement when read as a whole consistently contemplates that the onerous provisions relied on by Husband may be limited as provided within the agreement. Accordingly, we hold the premarital agreement did not bar Wife from receiving an equitable division of property acquired during the marriage, and we affirm the family court's award.

## II. Waiver of Alimony and Attorney Fees in the Premarital Agreement

Husband argues the family court erred in finding the waivers of alimony and attorney fees were void and unconscionable.[3] We agree.[4]

---

3. We note that the agreement contained a severability clause; therefore, the family court could find certain provisions unenforceable while upholding the agreement as a whole.

4. Husband also argues the family court's finding that the provisions of the premarital agreement waiving alimony and attorney fees were unconscionable, constituted gender bias, and violated his constitutional rights to equal protection. He further asserts that by treating the premarital contract differently than a commercial contract, the family court violated his equal protection rights by affording different treatment to his contract than would be afforded to the contract of an unmarried person. We disagree. The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination based upon gender and provides that people be treated alike under similar circumstances and conditions. U.S. Const. amend XIV, § 1; S.C. Const. art. I, § 3. Here, the family court did not base its findings on gender but rather on theories of law that apply equally to men and women, married and unmarried.

 South Carolina recognizes the validity of antenuptial agreements "if made voluntarily and in good faith and if fair and equitable." *Stork v. First Nat'l Bank of S.C.*, 281 S.C. 515, 516, 316 S.E.2d 400, 401 (1984). These agreements are "not opposed to public policy but are highly beneficial to serving the best interest of the marriage relationship." *Id.* Additionally, our supreme court has held that parties may waive alimony in separation agreements. *Moseley v. Mosier*, 279 S.C. 348, 353, 306 S.E.2d 624, 627 (1983). "The parties may specifically agree that the amount of alimony may not ever be modified by the court; they may contract out of any continuing judicial supervision of their relationship by the court; ... they may agree to any terms they wish as long as the court deems the contract to have been entered fairly, voluntarily, and reasonably." *Id.* at 353, 306 S.E.2d at 627. Although our courts have provided this broad language, no South Carolina authority directly addresses whether parties may waive alimony or attorney fees in premarital agreements.[5]

---

5. There are South Carolina cases mentioning waivers of support or attorney fees; however, in these cases, the enforcement of the agreement has not been at issue on appeal. *See Gilley v. Gilley*, 327 S.C. 8, 488 S.E.2d 310 (1997) (finding jurisdiction over property claims between former spouses who waived equitable division in antenuptial agreement was in circuit court); *Bowen v. Bowen*, 327 S.C. 561, 490 S.E.2d 271 (Ct.App.1997) (addressing attorney fees and property division pursuant to uncontested prenuptial agreement). In determining the waivers were against public policy, the family court relied in part on *Towles v. Towles*, 256 S.C. 307, 312, 182 S.E.2d 53, 55 (1971) (finding an agreement relieving the husband of his support obligation as a condition of continuing the marital relationship was void as against public policy) and *Crawford v. Crawford*, 301 S.C. 476, 482, 392 S.E.2d 675, 679 (Ct.App.1990) ("[T]he public policy of this state recognizes the reconciliation of the parties nullified the provisions of the separation and reconciliation agreements regarding the parties' agreements not to be liable for the support of each other."). We find the family court's reliance on these authorities is misplaced. Unlike this case, *Towles* and *Crawford* involved attempts to enforce reconciliation agreements made in contemplation of a continuing marital relationship. The "general law in South Carolina, is that, at least as to matters of support, a separation agreement is annulled by the reconciliation of the parties." *Bourne v. Bourne*, 336 S.C. 642, 646, 521 S.E.2d 519, 521 (Ct.App. 1999). Nothing in *Towles* or *Crawford* suggests that the same policy considerations applicable to reconciliation agreements also apply to premarital agreements, and we decline to so hold.

94

In the absence of South Carolina authority on point, we find it helpful to look to other jurisdictions for guidance. The current trend and majority rule allows parties to prospectively contract to limit or eliminate spousal support. *See generally Pendleton v. Fireman*, 24 Cal.4th 39, 99 Cal.Rptr.2d 278, 5 P.3d 839, 845–46 (2000); Allison A. Marston, *Planning for Love: The Politics of Premarital Agreements*, 49 Stan. L.Rev. 887, 897–99 (1997). *But see Connolly v. Connolly*, 270 N.W.2d 44, 46 (S.D.1978) (finding waiver of spousal support unenforceable and contrary to public policy).

Twenty-six jurisdictions have adopted all or a substantial portion of the Uniform Premarital Agreement Act (UPA). *Unif. Premarital Agreement Act*, 9B U.L.A. 369 (Supp.2001).[6] The UPA expressly allows parties to contract with respect to the modification or elimination of spousal support. *Id.* at § 3(a)(4). The UPA further provides: "If the provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support to the extent necessary to avoid that eligibility." UPA § 6(b). California, New Mexico, and South Dakota adopted the UPA without the provision authorizing the modification or elimination of spousal support. *Id.; see also Pendleton*, 99 Cal.Rptr.2d 278, 5 P.3d at 845–846 n. 9, 11.

Many jurisdictions that have not adopted the UPA have found such waivers valid and enforceable under certain circumstances. *See* Robert Roy, *Enforceability of Premarital Agreements Governing Support or Property Rights Upon Divorce or Separation as Affected by Fairness or Adequacy of Those Terms—Modern Status*, 53 A.L.R.4th 161 (1987 & Supp.2000); *see also Pendleton*, 99 Cal.Rptr.2d 278, 5 P.3d at 846 n. 11 (surveying case law from other jurisdictions addressing spousal support waivers); *Cary v. Cary*, 937 S.W.2d 777,

---

6. We note that legislation to adopt the UPA has been introduced to but not passed by the South Carolina General Assembly. *See* Roy T. Stuckey & F. Glenn Smith, *Marital Litigation in South Carolina Substantive Law* 678 (2nd ed.1997).

779 (Tenn.1996) (recognizing the majority rule is to uphold the validity of provisions in antenuptial agreements waiving or limiting alimony). Generally, a waiver of spousal support in a premarital agreement will be enforced unless the court finds the waiver unconscionable. We find the majority position best comports with the language in *Stork* and hold that antenuptial provisions waiving alimony and attorney fees are not per se void as against public policy.

Among states that have not adopted the UPA but do allow waivers of spousal support and attorney fees, a common framework for analyzing prenuptial agreements has arisen. *See Scherer v. Scherer,* 249 Ga. 635, 292 S.E.2d 662, 666 (1982) (finding in jurisdictions that enforce antenuptial agreements, these contracts "should not be given carte-blanche enforcement"). The test to determine whether such a provision should be enforced has three prongs: "(1) [W]as the agreement obtained through fraud, duress, or mistake, or through misrepresentation or nondisclosure of material facts? (2)[I]s the agreement unconscionable? (3) Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?" *Id., cited with approval in Brooks v. Brooks,* 733 P.2d 1044, 1049 (Alaska 1987); *Gentry v. Gentry,* 798 S.W.2d 928, 936 (Ky. 1990); *Rinvelt v. Rinvelt,* 190 Mich.App. 372, 475 N.W.2d 478, 482 (1991). We believe this test respects the parties' freedom to contract while allowing the family court to refuse to enforce the agreement if equity so requires and apply it to our analysis here.

With respect to the first prong, no party has alleged Wife signed under fraud or duress, and the record is clear that the parties had full and fair financial disclosure and both were represented by counsel. The second element has been hotly contested during this litigation. "Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc.,* 322 S.C. 399, 403, 472 S.E.2d 242, 245 (1996). In determining unconscionability, courts are limited to considering facts and circumstances existing when the contract was

executed. *See* Restatement (Second) of Contracts § 208 (1981); *see also Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 397, 498 S.E.2d 898, 903 (Ct.App.1998) ("If the court finds that a contract clause was unconscionable at the time it was made, the court may refuse to enforce the contract clause or limit the application of the unconscionable clause to avoid any unconscionable result."). We find the family court erred in considering facts and circumstances existing at the time of enforcement in assessing unconscionability. However, we agree with the family court's determination that Wife was not threatened or coerced to sign the agreement and she received sufficient legal advice and financial disclosure to make a reasonable and informed decision about the agreement. She had time to read the agreement, negotiated some of its terms, and had it reviewed more than once by an attorney. In addition, although the parties had vastly different financial resources, the agreement bound each party equally. Therefore, we find the clauses in question were not unconscionable at the time the agreement was executed.

We now shift our analysis to whether the facts and circumstances at the time of enforcement had changed such that it was unfair or unreasonable to enforce the agreement. At the time Wife signed the agreement, she had serious health problems, including diabetes and sponge kidney disease. The premarital agreement specifically noted Wife's health problems. It was completely foreseeable to Wife that her health would worsen. Wife's attorney advised Wife not to sign the agreement because of her health problems. Although it is unfortunate that Wife's health has deteriorated, we do not find that fact alone sufficient to justify nullifying a contract Wife freely and voluntarily signed, fully aware that under its terms she would not receive any spousal support. Under these circumstances, we decline to find that the waiver of alimony was unenforceable and reverse the family court's support award.[7]

We find that the same analysis applies to waivers of attorney fees. This court has previously held that despite the

---

7. Because we reverse the family court's finding that the waiver of alimony was unenforceable, we need not reach Husband's argument that Wife is capable of working. Were we to reach the issue, we would uphold the family court's finding based on the testimony of Doctors Lilavivat and Brandt. If the agreement were unenforceable, we would

general rule that attorney fees are within the discretion of the family court, if an agreement is "clear and capable of legal construction, the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to them." *Bowen v. Bowen*, 327 S.C. 561, 563, 490 S.E.2d 271, 272 (Ct.App.1997).[8] Because we find the agreement and its provisions were enforceable, we reverse the family court's award of attorney and accounting fees.

## CONCLUSION

We find that Wife waived all rights to alimony and attorney fees by operation of the premarital agreement. Therefore, the family court erred in awarding her alimony and attorney fees and accounting costs. However, we find that the premarital agreement does not bar equitable division of property acquired during the marriage and that the family court properly divided the marital estate.

**AFFIRMED IN PART AND REVERSED IN PART.**

CURETON and HOWARD, JJ., concur.

also affirm the amount of the family court's awards of alimony and attorney fees and costs.

8. As noted previously, neither party in *Bowen* contested the enforceability of the antenuptial agreement.