585 S.E.2d 501

**Mary F. HARDEE, Respondent/Petitioner,**

v.

**Jerry N. HARDEE and Hardee Construction Company, Inc., Petitioners/Respondents.**

**No. 25695.**

Supreme Court of South Carolina.

Heard June 24, 2003.

Decided Aug. 11, 2003.

Rehearing Denied Sept. 10, 2003.

James T. McLaren and C. Dixon Lee, III, of McLaren and Lee, and Jan L. Warner, all of Columbia, for Respondent–Petitioner.

Harry C. Wilson, Jr. of Lee, Erter, Wilson, James, Holler, and Smith, LLC, of Sumter, for Petitioners–Respondents.

JUSTICE WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion reported at 348 S.C. 84, 558 S.E.2d 264 (2001). We affirm as modified.

## FACTS

Jerry Hardee (Husband) and Mary Hardee (Wife) met in 1986, while Wife was working as officer manager for the law firm which was handling Husband's second divorce. Both Husband and Wife had children from prior marriages. Wife moved into Husband's home in April 1987, and they lived together until December 24, 1988, when Husband proposed. They planned a March 18, 1989 wedding day. In early February 1989, Husband presented Wife with a prenuptial agreement drafted by his attorney (Miles). Wife showed the agreement to her employer/attorney (Young), who advised her not to sign it. Although Wife was upset about the agreement, she signed it on February 22, 1989. The parties were married on March 18, 1989.

The prenuptial agreement noted that Wife, age 41 at the time, had diabetes and sponge kidneys. It also provided, *inter alia:*

1. That all properties of any kind or nature, real, personal or mixed, wheresoever the same may be located, which belong to each party, shall be and forever remain the personal estate of the said party, including all interest,

rents, and properties which may accrue therefrom **unless otherwise so stated in this Agreement.**

4.   That **each party, in the event of separation or divorce, shall have no right against the other by way of claims for support, alimony, attorney's fees, cost, or division of property, except as specifically stated hereinafter.**

7.   It is specifically understood and agreed that should a separation or divorce occur between the parties, each of the parties would maintain all of their property as if the marriage had never occurred and each of the parties will have no interest whatsoever in the property of the other **except as hereinafter provided.**

9.   The provisions contained herein **shall in no way affect the property, whether real, personal or mixed which shall be acquired by the parties, whether titled separately or jointly, subsequent to the date of this Agreement.**

10.   ... Each party acknowledges that they shall have no right against the other by way of claim for support, alimony, attorney fees, costs or division of property, except as stated within this agreement. (Emphasis added).

In 1995, Wife discovered Husband was having an affair with another woman. As a result, Husband left the marital home. Thereafter, Wife instituted this action seeking a divorce on grounds of adultery, habitual drunkenness, and physical cruelty. She sought alimony, spousal support, equitable distribution of marital property, and attorney's fees. The family court granted Wife a divorce on the ground of adultery. The family court also ruled the waivers of alimony, spousal support and attorney's fees were contrary to public policy and void; it further held the agreement did not bar equitable division of property acquired during the marriage. The court also found that there had been a substantial and material change in circumstances since the execution of the agreement inasmuch as Wife was, at the time of the final hearing, totally disabled and unable to support herself.[1] The family court awarded Wife permanent periodic alimony of $4,250 per month and

---

1.   The court found Wife suffered from even more serious conditions than those that existed prior to the marriage, including diabetes mellitus, sponge kidney, Lupus, neuropathy of the extremities, heart irregularities, vision problems, and thyroid problems, and that she was unable to be gainfully employed.

ruled that property acquired by the parties during the marriage be divided with Husband receiving 70% of the assets and Wife receiving 30%. Lastly, the family court awarded Wife $85,000 in attorney fees and $15,000 in accounting fees and costs.

The Court of Appeals affirmed in part and reversed in part. 348 S.C. 84, 558 S.E.2d 264 (2001). The Court upheld the family court's determination that the prenuptial agreement did not bar the equitable division of property acquired by the parties during the marriage. However, it held the family court erred in finding the waivers of alimony, support, and attorney fees were void and unconscionable. Both parties appeal.

## ISSUES

1. Did the Court of Appeals err in upholding the family court's determination that the prenuptial agreement did not bar equitable distribution of property acquired during the marriage? (Husband's Appeal).

2. Did the Court of Appeals err in holding that the prenuptial agreement's provisions relating to alimony, support, and attorney's fees were not unconscionable or contrary to public policy? (Wife's Appeal).

## 1. EQUITABLE DISTRIBUTION

■■ Husband argues the Court of Appeals erred in holding the prenuptial agreement allowed for equitable distribution of assets acquired by the parties during the marriage. We disagree.[2] As noted previously, paragraph 9 of the agreement provides:

9. The provisions contained herein **shall in no way affect the property, whether real, personal or mixed which shall be acquired by the parties, whether titled separately or jointly, subsequent to the date of this Agreement.**

---

**2.** S.C.Code Ann. § 20–7–473(4) (Supp.2002) permits exclusion of property from the marital estate if excluded by a written antenuptial agreement which was voluntarily executed and both parties were represented by separate counsel.

(Emphasis added). We agree with the Court of Appeals that this provision patently and unambiguously allows Wife equitable distribution of any and all property acquired by the parties during the marriage, whether titled in Husband's name, Wife's name, or both.

■■■ When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 334 S.C. 529, 514 S.E.2d 327 (1999). The judicial function of a court of law is to enforce a contract as made by the parties, and not to rewrite or to distort, under the guise of judicial construction, contracts, the terms of which are plain and unambiguous. *S.S. Newell & Co. v. American Mut. Liab. Ins. Co.*, 199 S.C. 325, 19 S.E.2d 463 (1942). Accordingly, we affirm the Court of Appeals' ruling concerning the equitable distribution of property acquired during the marriage.

## 2. ALIMONY, SUPPORT & ATTORNEY'S FEES

■■ The issue we must decide is whether a prenuptial agreement purporting to waive alimony, support, and attorney's fees is void and unenforceable as against the public policy of this state.

Recent case law of this Court supports Husband's contention that parties are free to contractually alter the obligations which would otherwise attach to marriage. In *Stork v. First Nat'l Bank of South Carolina*, 281 S.C. 515, 516, 316 S.E.2d 400, 401 (1984), this Court held that antenuptial agreements "will be enforced if made voluntarily and in good faith and if fair and equitable.... Such contracts are not opposed to public policy but are highly beneficial to serving the best interest of the marriage relationship." Similarly, in *Moseley v. Mosier*, 279 S.C. 348, 306 S.E.2d 624 (1983), we addressed a family court's jurisdiction over a separation agreement which had not been merged into the parties' divorce decree. This Court directly acknowledged that, although subject to family court approval, that the parties may contract concerning their property settlement, and alimony, and that "they may agree to any terms they wish as long as the court deems the contract to have been entered fairly, voluntarily and reasonably." 279 S.C. at 353, 306 S.E.2d at 627.

More recently, in *Gilley v. Gilley,* 327 S.C. 8, 488 S.E.2d 310 (1997), the husband brought an action for an order of separate maintenance and support, equitable distribution, and attorney's fees. Although the validity of the prenuptial agreement was not at issue in *Gilley,* this Court affirmed the family court's finding that husband's action did not belong in family court since the prenuptial agreement provided neither party could claim alimony or separate maintenance.

As noted by the Court of Appeals in this case, "[t]he current trend and majority rule allows parties to prospectively contract to limit or eliminate spousal support." 348 S.C. at 94, 558 S.E.2d at 269, *citing Pendleton v. Fireman,* 24 Cal.4th 39, 99 Cal.Rptr.2d 278, 5 P.3d 839, 845–46 (2000); Allison A. Marston, *Planning for Love: The Politics of Premarital Agreements,* 49 Stan. L. Rev. 887, 897–99 (1997). As noted in Richard A. Lord, 5 *Williston on Contracts* § 11:8 (4th ed.) (May 2003):

> In the past two decades ... the courts have reconsidered ... public policy in light of societal changes, and today, premarital agreements, so long as they do not promote divorce or otherwise offend public policy, are generally favored as conducive to the welfare of the parties and the marriage relationship as they tend to prevent strife, secure peace, and adjust, settle, and generally dispose of rights in property.

*Accord Cary v. Cary,* 937 S.W.2d 777, 782 (Tenn.1996) (declaring agreements waiving or limiting alimony enforceable, "so long as the antenuptial agreement was entered into freely and knowledgeably, with adequate disclosure, and without undue influence or overreaching"); *Marriage as Contract and Marriage as Partnership: The Future of Antenuptial Agreement Law,* 116 Harv. L. Rev. 2075 (May 2003) (noting that states have shifted from holding antenuptial agreements *per se* invalid as contrary to public policy to holding them judicially enforceable). We concur with the majority of jurisdictions which hold that prenuptial agreements waiving alimony, support and attorney's fees are not *per se* unconscionable, nor are they contrary to the public policy of this state.[3]

---

**3.** Wife cites *Towles v. Towles,* 256 S.C. 307, 182 S.E.2d 53 (1971) for the proposition that a contractual waiver of spousal support or alimony

The Court of Appeals adopted the following test, to determine whether a prenuptial agreement should be enforced: "(1) Was the agreement obtained through fraud, duress, or mistake, or through misrepresentation or nondisclosure of material facts? (2) Is the agreement unconscionable? (3) Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?" *Citing Scherer v. Scherer*, 249 Ga. 635, 292 S.E.2d 662, 666 (1982); *Brooks v. Brooks*, 733 P.2d 1044, 1049 (Alaska 1987); *Gentry v. Gentry*, 798 S.W.2d 928, 936 (Ky.1990); *Rinvelt v. Rinvelt*, 190 Mich.App. 372, 475 N.W.2d 478, 482 (1991). *See also Blue v. Blue*, 60 S.W.3d 585 (Ky.App.2001); *Cantrell v. Cantrell*, 19 S.W.3d 842 (Tenn.App.1999); *Booth v. Booth*, 194 Mich.App. 284, 486 N.W.2d 116 (1992). Applying these factors to the case at hand, the Court of Appeals found the agreement had been entered after fair and full disclosure, with advice from Wife's attorney, it was not unconscionable, and that circumstances had not so changed as to render the agreement unfair and unenforceable. We adopt this test and

is against public policy and void. *Towles* involved a reconciliation agreement entered into subsequent to the marriage; it is therefore distinguishable from the present case. In any event, we take this opportunity to overrule *Towles* in light of its outdated views concerning women. There, we invalidated a reconciliation agreement finding it "tantamount to a release of the husband of his duty to perform his essential marital obligations and ... therefore, void as against public policy." *Id.* at 311, 182 S.E.2d at 54. We went on to state, "Among the essential incidents to marriage is the **duty of the husband to support his wife.** 41 Am.Jur. 2d, *Husband and Wife*, Sections 329 and 330; *State v. Bagwell*, 125 S.C. 401, 118 S.E. 767. An agreement whereby the **husband is relieved of this obligation to support his wife,** as a condition of the marital relationship, is against public policy and void." *Id.* at 312, 182 S.E.2d at 55. (emphasis supplied).

We find *Towles* represents an outdated and unwarranted generalization of the sexes which is no longer warranted in today's society. *See e.g. United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996)(gender classifications should not be used as they once were to create or perpetuate the legal, social, and economic inferiority of women; cautioning reviewing courts to closely scrutinize generalizations or tendencies of the sexes). As we have done in other cases, we find the distinction between men and women is based upon "old notions" that females should be afforded special protection. *Accord In the Interest of Joseph T*, 312 S.C. 15, 430 S.E.2d 523 (1993); *Richland Mem'l Hosp. v. Burton*, 282 S.C. 159, 318 S.E.2d 12 (1984). Accordingly, we overrule *Towles* to the extent it relies upon outdated notions which are violative of equal protection.

agree with the Court of Appeals' conclusion that the prenuptial agreement in this case was enforceable.

It is patent that the agreement here was not obtained through fraud, duress, misrepresentation or nondisclosure. Wife was separately represented by her own counsel, by whom she was employed, was fully aware of the extent of husband's assets, and was advised by her attorney not to sign the agreement.

As to unconscionability, this Court has held that unconscionability is the absence of meaningful choice on the part of one party due to one-sided contract provisions together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 542 S.E.2d 360 (2001); *Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc.*, 322 S.C. 399, 472 S.E.2d 242 (1996). Clearly, Wife here had a meaningful choice: she could have refused to sign the agreement and opted against marrying Husband if he insisted on a prenuptial agreement. Further, Wife received some substantial benefits from being married to Husband for the five-year duration of their marriage, such as a heightened standard of living, owning several homes, and driving luxury cars. *Accord Gant v. Gant*, 174 W.Va. 740, 329 S.E.2d 106, 116 (1985)(noting that "marriage can be of substantial economic, as well as emotional value to a financially weak party").

Lastly, the inquiry is whether the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable? The family court found Wife totally disabled and unable to support herself; it also found Wife would be a public charge if substantial support were not given. The Court of Appeals held the facts and circumstances at the time of enforcement of the agreement had not changed to such an extent that it was unfair or unreasonable to enforce the agreement. It stated:

> At the time Wife signed the agreement, she had serious health problems, including diabetes and sponge kidney disease. The premarital agreement specifically noted Wife's health problems. It was completely foreseeable to Wife that her health would worsen. Wife's attorney advised Wife not to sign the agreement because of her health problems.

Although it is unfortunate that Wife's health has deteriorated, we do not find that fact alone sufficient to justify nullifying a contract Wife freely and voluntarily signed, fully aware that under its terms she would not receive any spousal support.

348 S.C. at 96, 558 S.E.2d at 270. Under the circumstances of this case, we agree with the result reached by the Court of Appeals. We concur with Husband that it would be unfair and inequitable to permit a party who, fully aware of serious health issues and declining health, knowingly signs a prenuptial agreement against the advice of her attorney, to thereafter recover alimony and/or support. Accordingly, we affirm the Court of Appeals' ruling in this case.[4]

Finally, Wife asserts that if this Court affirms the Court of Appeals' holding that prenuptial agreements are valid and enforceable, our opinion should be given prospective application only as it creates new substantive rights. We disagree.

█ Judicial decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively; prospective application is required when liability is created where formerly none existed. *Osborne v. Adams*, 346 S.C. 4, 550 S.E.2d 319 (2001). We find the Court of Appeals' holding in this case does not create any new substantive rights. On the contrary, the Court of Appeals' holding is simply a matter of basic contract enforcement. Moreover, in light of our prior precedents of *Stork, supra,* and *Gilley, supra,* our holding in this case is not a departure from established precedent. The Court of Appeals' opinion is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

4. However, we note that, in a case in which a party is unaware of health issues at the time a prenuptial agreement is entered, but who becomes aware of serious health issues subsequent to its execution, a different result may well ensue.