THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Marion H. Wolf, Respondent,
 
 
 

v.

 
 
 
 Robert L. Wolf, Appellant.
 
 
 

Appeal From Calhoun County
 William J. Wylie, Jr., Family Court Judge

Unpublished Opinion No. 2008-UP-245
Heard March 7, 2008  Filed April 25, 2008    

AFFIRMED

 
 
 
 Stephen R. Fitzer, of Columbia, for Appellant.
 John G. Felder and Thomas Derrick Felder, both of St. Matthews,
 for Respondent.
 
 
 

PER CURIAM:  The
 family court granted Marion H. Wolf (Wife) and Robert L. Wolf (Husband) a
 divorce on the ground of one years separation and divided the parties
 property.  Husband appeals, asserting the family court erred in awarding the
 marital home to Wife, in finding he was in possession of some of Wifes
 jewelry, in awarding Wife an additional $50,000 from an investment account, and
 by admitting evidence of Husbands conviction for tax evasion.  We affirm.
FACTS
Wife married Husband, a physician, in New York City on November
 21, 1985.  Wife was then 42, Husband was 57.  It was the second marriage for
 both parties and no children were born of the marriage.  At the urging of
 Husband, the parties executed a prenuptial agreement on September 13, 1985. 
 The primary relevance of the prenuptial agreement to this litigation was the
 parties intent to treat as separate, nonmarital property all property titled in
 their respective individual names.  This contractual arrangement stemmed from
 Husbands prior difficulties with the Internal Revenue Service.
Husband and Wife originally lived in New York City, where Husband
 maintained his medical practice, and in a home in Danbury, Connecticut (the
 Connecticut Property).  Husband acquired the Connecticut Property before the
 parties marriage, but Husband transferred title to his son to keep it out of
 his name for tax and other purposes.  The son deeded the Connecticut Property
 to Wife in 1987 for $1.00.    
The couple moved to South Carolina in 1994 and acquired a horse
 farm (the Farm) known as Brigadoon in St. Matthews.  The Farm was purchased
 in Wifes name only for the stated price of $240,000.  The parties separated in
 October 2002.  
By
 order filed April 10, 2006, the family court granted the parties a divorce on
 the ground of one years separation.  At trial, only Wife challenged the
 validity of the prenuptial agreement.  The court found the prenuptial agreement
 is valid under New York and South Carolina law.  The court granted Wife the
 Farm (including livestock), finding it was her separate property under the
 terms of the prenuptial agreement, as well as certain personal property. 
 Husband was also awarded personal property.  Husband was ordered to return
 certain jewelry to Wife.  To ensure Husbands return of the jewelry, Wife was
 authorized to withhold $50,000 from Husbands share of an investment account
 with Brown & Company Securities Corporation (the Brown account).  The
 account had a balance of just over one million dollars.  Husband and Wife were
 ordered to equally divide the balance of the Brown account after an initial
 $50,000 distribution was made to Wife.  Wifes claim for alimony was
 denied, and each party was ordered to pay his or her own attorneys fees. 
 Husband appeals.[1]
LAW/ANALYSIS
I.  The Farm 
 [Husbands Issues I, II, IV & VI]
Husband
 argues the family court erred in awarding the Farm to Wife.  Specifically,
 Husband asserts the family court erred in awarding the Farm to Wife based on
 its finding Wife purchased the Farm in her name with proceeds from the sale the
 Connecticut Property, which had been gifted to her.  Husband states Wife had no
 tangible assets in her name when they married and the court erred by not
 considering an equitable division of the Farm and livestock because marital
 property, regardless of how title is held, is subject to equitable division. 
 Husband also asserts the family court erred as a matter of law in failing to
 find the marital estate was to be divided in accordance with the prenuptial
 agreement.  
Husband
 argues in the alternative that the family court erred in failing to find the
 Farm was transmuted into marital property because it was utilized by the parties
 in support of the marriage.  Husband states his income was used to maintain
 Wife and that Wife never exercised any independence to demonstrate that she
 intended the marital residence to be non-marital property.  
Husbands
 arguments are foreclosed by the prenuptial agreement, which he did not
 challenge at trial. 
Article
 II of the parties prenuptial agreement, entitled Separate and Marital
 Property, provides in section three as follows:

 3.  Each of the parties agrees that the property
 described hereafter shall remain the separate property of the other party:
 (a) all property, whether real or personal, belonging
 to or owned by the other party at the time of their marriage, including assets
 acquired by each of them in their separate names while living together outside
 the marital relationship;
 (b)  all property acquired by the other party out of
 the proceeds or income from property owned at the time of the marriage, or
 attributable to appreciation in value of said property, whether the enhancement
 is due to market or economic conditions or to the contributions, services,
 skill or efforts of either of the parties to this agreement;
 (c)  all property hereafter acquired by the other
 party by gift, devise, bequest or inheritance.  [Emphasis added.]  

 In
 awarding the Farm to Wife, the family court reasoned the Connecticut Property
 was a gift to her and that the proceeds from the sale of the Connecticut
 Property were used to purchase the Farm in her name only; therefore, the Farm
 remained Wifes sole property in accordance with the terms of the prenuptial
 agreement.    
We
 believe the prenuptial agreement controls the disposition of the Farm. 
 However, our analysis of the agreement focuses on a different provision than
 the one relied upon by the family court.  See Rule 220(c), SCACR
 (allowing an appellate court to affirm on any ground appearing in the record). 
 Article II, section four of the agreement specifically provides as follows:

 4.  With respect to any marital property
 that may be acquired or accumulated during the marriage, the parties do hereby
 mutually waive, release and forego any and all rights and claims of every kind,
 nature and description, in and to the property or assets real or personal, of
 or in the name of the other, regardless of its nature, or wheresoever
 situated, and each party shall during his or her lifetime keep and retain sole
 ownership, control and enjoyment of all such property, real or personal, now
 owned or hereafter acquired by him or her, free and clear of any claim by the
 other.  This provision is intended to and shall serve as a complete and
 absolute waiver and release by each party to the other of any and all claims
 they may now or hereafter have with respect to the property, real and personal,
 now or hereafter owned by the other.  [Emphasis added.]  

This
 section provides that property acquired or accumulated by either party after
 the marriage will remain that partys separate property.  Furthermore, the
 parties waive any right to property of or in the name of the other.  Although
 the reasons for Wife having title to the Farm may be disputed, there is no
 question that it is titled solely in her name.  Consequently, the application
 of this provision results in Husband waiving any claim to the property and Wife
 retaining it as her own.
This is
 an unusual provision as it premises the award of property acquired after the
 marriage on title as opposed to any contribution to its acquisition, whether
 financial or otherwise.  However, our courts have supported the right of the
 parties to define their property rights by contractual agreement:  [P]arties
 are free to contractually alter the obligations which would otherwise attach to
 marriage.  Hardee v. Hardee, 355 S.C. 382, 387, 585 S.E.2d 501, 503
 (2003).  
In Hardee, our supreme court cited with approval the
 following test adopted by this court to be used when determining whether a
 prenuptial agreement should be enforced:  (1) Was the agreement obtained
 through fraud, duress, or mistake, or through misrepresentation or
 nondisclosure of material facts?  (2) Is the agreement unconscionable?  (3)
 Have the facts and circumstances changed since the agreement was executed, so
 as to make its enforcement unfair and unreasonable?  Id. at 389, 585
 S.E.2d at 504.  
In the
 current appeal, the question of enforceability is not before us.  Wife
 questioned the enforceability of the agreement in the family court, but she
 does not appeal the family courts finding that the prenuptial agreement is
 valid.  Husband has argued only that the family court misinterpreted the
 agreement or did not apply it, but he does not argue that the agreement is
 unenforceable.  Consequently, the family courts finding that the agreement is
 valid is the law of the case.  See, e.g., Dreher v. Dreher, 370
 S.C. 75, 634 S.E.2d 646 (2006) (stating a ruling that is unappealed becomes the
 law of the case and will not be considered further on appeal).
The
 prenuptial agreement was no doubt intended to protect Husband since he had the
 vast majority of assets coming into the marriage.  Nevertheless, the parties
 were aware of the terms of the agreement and made the decision to title the
 Farm solely in Wifes name.  The award of the Farm to Wife as her separate,
 nonmarital property may not appear equitable, but it is the result called for
 under the prenuptial agreement orchestrated by Husband.  As noted, the validity
 of the prenuptial agreement is the law of the case.  Thus, in light of the
 plain language of the agreement, we affirm the family courts ruling that the
 Farm is the property of Wife.[2]  
II.  Jewelry 
 [Husbands Issue III]
Husband
 next contends the family court abused its discretion in finding he was in
 possession of some of Wifes jewelry.  
There
 is evidence in the record, as outlined by the family court, that Husband had
 access to a locked cabinet where some of Wifes jewelry was kept along with her
 United States and British passports.  When Wife checked the cabinet to
 retrieve her items, everything was missing.  Wifes U.S. passport later turned up
 in Husbands possession, and he returned it to Wifes attorney so she could
 attend her fathers funeral.  Husband denied that he had removed Wifes
 jewelry.  The family court found, however, that Husband removed this jewelry
 from the cabinet since he had removed Wifes U.S. passport, which was kept in
 the cabinet with the jewelry.  
We hold the evidence supports the family courts finding. 
 Although Husband correctly asserts there was no police report made of a theft,
 we do not think this fact is determinative.  If Wife believed the jewelry was
 simply retained by Husband, as opposed to stolen by an unknown third party, she
 might have reasonably believed the issue could be resolved in the divorce
 proceedings.  In this case, the family court judge saw and heard the witnesses
 and was in a better position to evaluate their demeanor and to assign weight to
 their credibility.  See Strickland v. Strickland, 375 S.C. 76,
 82, 650 S.E.2d 465, 469 (2007) ([A]ppellate courts should be mindful that the
 family court, who saw and heard the witnesses, sits in a better position to
 evaluate credibility and assign comparative weight to the testimony.).  We
 find no error in the family courts determination in this regard.
III.  The
 Brown Account  [Husbands Issue V]
Husband
 contends the family court erred in awarding Wife a $50,000 distribution from
 the Brown account.  
In the motion to alter or amend that Husband submitted to the
 family court, he challenged the $50,000 distribution on the following basis:

 8.  Defendant moves [the family court] to reconsider its finding
 that the defendant should be charged with the $50,000 disbursement from the
 Brown account, since this disbursement was authorized by the court as a
 necessary and proper expenditure for defendants needs pendente lite.  

On
 appeal, however, Husband asserts we should reverse the $50,000 award because it
 was not provided for in the courts memorandum of instructions for preparing
 the order.  As Husband argues for the first time on appeal, the $50,000 award was
 gratuitously placed in the order by Wifes counsel, who drafted the order. 
 Although we cannot find this provision in the family courts instructions, we
 conclude this issue is not properly before us for review.  Husband did not make
 the argument in the trial court that he now urges on appeal, and a party cannot
 assert error based on one ground at trial and a different ground on appeal.  See,
 e.g., McKissick v. J.F. Cleckley
 & Co., 325 S.C. 327, 344, 479
 S.E.2d 67, 75 (Ct. App. 1996) (stating the same ground for an objection
 must be argued to the trial court and on appeal to preserve an alleged error
 for review, and a challenge on a specific ground may not be raised for the
 first time on appeal).
IV.  Evidence
 of Prior Conviction  [Husbands Issue VII]
Husband
 lastly contends the family court erred in allowing Wifes attorney to question
 him about his conviction for tax evasion.  He asserts the evidence was
 inadmissible under Rule 609, SCRE because more than ten years had elapsed since
 the date of his conviction.  
Rule
 609(a)(2), SCRE provides that for the purpose of attacking the credibility of a
 witness, evidence that any witness has been convicted of a crime shall be
 admitted if it involved dishonesty or false statement, regardless of the punishment. 
 Under Rule 609(b), SCRE, if a period of more than ten years has elapsed since
 the date of the conviction or of the release of the witness from confinement,
 whichever is later, evidence of the conviction may not be used unless the
 court determines, in the interests of justice, that the probative value of the
 conviction supported by specific facts and circumstances substantially
 outweighs its prejudicial effect.  Rule 609(b) further requires that advance
 written notice of the intent to use such evidence be given to the other party.  Id.
During
 Wifes direct examination, she testified that she did not know at the time she
 married Husband that he had a prior conviction for tax evasion.  She stated she
 did not find out about it until years later.  Husbands counsel objected,
 arguing they were going to try to introduce [evidence] about a conviction that
 is more than [ten] years old and [u]nder [Rule] 609, they cant do that. 
 Wifes counsel stated the information was offered to show that Husband did not
 disclose the information to Wife.  The family court overruled the objection
 without comment and no further argument was made by either party.    
During Husbands direct testimony, Husband asserted that he had
 transferred some property out of his name due in part to income tax
 problems.  On cross-examination, Wifes counsel asked him about the nature of
 the tax difficulties.  Husbands counsel did not object to this line of
 questioning, and Husband answered, The difficulty was the assertion that I
 didnt pay all my taxes.  The outcome was that I was convicted of that. 
 Husband stated he paid a fine and served a sentence of three months in prison.    
On
 appeal, Husband summarily contends evidence of his prior conviction was
 admitted in violation of Rule 609 because more than ten years had elapsed since
 the conviction.  Convictions more than ten years old may be admitted after the
 court performs a balancing test.  Here, the family court did not perform a
 balancing test.  No argument was made at trial regarding the prejudicial nature
 of the conviction versus its probative effect.  In addition, this passing
 reference was harmless as Husband has demonstrated no prejudice.  First, the
 evidence was cumulative, as it came in without objection on another occasion
 via Husbands own testimony.  Second, the family court noted in its memorandum
 for preparing the order that neither Wife nor Husband were credible witnesses
 and that Husbands testimony was often evasive and misleading.  Thus, there
 were other inconsistencies in the testimony that caused the family court to
 have concerns about Husbands credibility that were unrelated to his tax
 problems.  We have carefully reviewed the record, and we find ample support
 (beyond Husbands stale conviction for tax evasion) for the family courts
 finding that Husbands testimony lacked credibility.
Accordingly, we find Husband has not established reversible
 error.  See, e.g., Jamison
 v. Ford Motor Co., 373 S.C. 248,
 261, 644 S.E.2d 755, 761 (Ct. App. 2007) (To warrant reversal based on
 the admission or exclusion of evidence, the complaining party must prove both the
 error of the ruling and the resulting prejudice.).
CONCLUSION
Based
 on the foregoing, we conclude (1) the Farm is the property of Wife pursuant to
 the terms of the parties prenuptial agreement; (2) evidence in the record
 supports the family courts ruling that Husband retained possession of some of
 Wifes jewelry; (3) the issue concerning the $50,000 distribution from the
 Brown account is not preserved for our review; and (4) Husband has shown no
 reversible error in the admission of testimony concerning his prior conviction
 for tax evasion.  
AFFIRMED.
HUFF, KITTREDGE, and WILLIAMS, JJ., concur.

[1]  Husbands appellate counsel did not represent Husband
 at trial.
[2]  Because of our disposition of this issue, we
 need not address the other arguments Husband raises regarding the Farm.  We
 note, however, that Husbands argument regarding transmutation is not preserved
 for appeal as it was raised for the first time, and then only summarily, in
 Husbands return to Wifes reply to his motion to alter or amend the judgment.