13476

LEE *ET AL.* v. MARION NAT. BANK *ET AL.*

(166 S. E., 148)

170

172

174

175

178

182

190

*Mr. M. C. Woods,* for appellant, Marion National Bank,

*Mr. N. B. Hargrove,* for appellant, J. H. McLaurin,

*Messrs. W. C. Moore* and *Gibson & Muller,* for respondents,

September 21, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is an appeal from the decree of Hon. C. C. Featherstone, Circuit Judge. It is a very able document, and if its fundamental findings of fact were borne out by the evidence, its argument and conclusions would be unanswerable, and its citations of authorities and quotations of law apt and convincing. It is a matter in chancery and the evidence is reviewable by this Court.

The Circuit decree is based upon the finding of the Circuit Judge that the account of J. N. Hargrove in the Marion National Bank was a special cotton account, that by agreement or understanding with the bank Hargrove bought cot-

ton for which he gave checks on the defendant bank, and deposited with the bank drafts drawn on parties to whom he shipped the cotton, the proceeds of which drafts were intended to pay for such cotton. The decree further finds that the bank knew of this custom, acquiesced in it, and is bound by it and is estopped to deny it; that the funds so arising are impressed with a special trust in favor of the persons to whom the checks were given for cotton purchased.

J. N. Hargrove was a cotton buyer with headquarters in Dillon, S. C. It seems that he had accounts with the Bank of Dillon and the defendant Marion National Bank of Marion, S. C. It is alleged in the complaint that the 3d day of January, 1930, he purchased certain cotton from Carolina Textile Corporation, from Lee & Lee, from H. J. McCutcheon, from Dillon Agricultural Loan Association, and from L. Cottingham, for which he gave to the said respective parties in payment of such cotton, his checks, drawn on his "cotton account," in the defendant Marion National Bank; that in order to meet these checks, in accordance with his custom and agreement with the bank, he deposited with it drafts on Joseph Walker & Co. and Alexander Sprunt & Sons, in the aggregate of the amount due plaintiffs for the cotton that day purchased of them; that these drafts were paid; *that the proceeds of these drafts, "and any other amounts that might be on hand in said bank to the credit of said 'cotton account' of J. N. Hargrove, constituted a trust or special fund, a deposit for the payment of said checks, or the debts due to plaintiffs which were represented thereby."*

Special emphasis is given to this allegation because here lies the core of the whole case.

The answer of the bank denies the material allegations of the complaint and denies liability. The defendant J. H. McLaurin, as administrator of J. N. Hargrove, who died January 6, 1930, for answer denies that Hargrove's account in defendant bank was a cotton account and alleges that it

was merely a checking account. He claims the deposited funds as against the plaintiffs and the bank.

The Circuit Judge finds that J. N. Hargrove's account in the Marion National Bank was a special "cotton account"; that it was his custom and agreement with the bank to give checks on this "cotton account" for cotton purchased by him and covered the checks by drafts on the persons and firms to whom he shipped the cotton so bought. He further finds that plaintiffs knew of this custom and agreement and dealt with Hargrove in view of it.

He held that the funds in the bank to the credit of J. N. Hargrove were impressed with a special trust in favor of the plaintiffs, and that the administrator of Hargrove was not entitled thereto.

The bank and the administrator appeal.

We repeat that the crucial question in the case is this: Was the account of J. N. Hargrove in Marion National Bank a special cotton account, or was it a general checking account? Upon the finding that it was a special cotton account, Judge Featherstone has written a powerful and learned decree. If his finding were supported by the evidence, there could be no attack upon his conclusions and the applicability of his authorities. It is because we cannot concur in his finding that this was a special cotton account that we are constrained to reverse his decree. It seems to us that it would be a serious menace to the security and stability of banking, financial and commercial business, to establish, upon the strength of evidence of the character advanced in this case, the rule that a special trust grows out of such transaction.

If there be eliminated from the record the evidence that J. N. Hargrove used checks upon which were printed the words "cotton account" and that he gave such checks to the plaintiffs, it would be impossible to find any evidence in support of the contention that his account in Marion National Bank was a special cotton account. But undisputed

evidence is that these printed checks were not furnished by the bank, but by Hargrove himself; that the name of no payee bank was printed thereon; they were drawn on the only account he had in the bank; that he used them for all purposes, for cotton purchases, for payment of farm expenses, clothing, supplies, church dues, automobiles, furniture, salaries, and every kind of personal call. It is alleged that the bank knew that he kept this special cotton account; the bank officials testify, categorically, that he kept only a general account upon which he checked in payment of cotton and any and everything else. It is alleged that plaintiffs knew of this special cotton account and dealt with him with it in view. The only one of the plaintiffs who attempts to say that it knew of it was the Carolina Textile Corporation. Its president, Mr. Brown, undertook to say that he knew of the cotton account, but on cross examination it developed that he predicated his conclusion upon the use by Mr. Hargrove of the checks which had printed on them "cotton account."

The overwhelming weight of the evidence is that Hargrove had but one account in the defendant bank; in it he deposited his funds, from whatever source derived, as for instance from his farms, from cotton sold by him, from money borrowed, from checks from others to him, from checks given by him on other banks. On the day these checks were given to plaintiffs, he deposited in the defendant bank the drafts on Joseph Walker & Co., and Sprunt & Sons for the value of the cotton that day bought by him and shipped to them, *and on the same day deposited in the bank four checks on the Bank of Dillon—three* of them given to him by others, apparently, and one for $3,000.00 given by him. All of these items were placed to the credit of Hargrove in his general account, along with the drafts of Walker & Co., and Sprunt & Sons.

In the face of this evidence, we are unable to concur in the finding that the account was a special cotton account. It follows that this basic finding by the Circuit Judge being in-

correct, the decree predicated thereon is incorrect. It is, then, useless to discuss the several phases of the decree and to analyze the authorities which evidence the study and care given the case by the learned Circuit Judge. Conceding, if you please, their correctness in principle, it remains true that they have no applicability here.

If, however, it be held otherwise, still it must be held that the plaintiffs H. J. McCutcheon and Carolina Textile Corporation would not be entitled to participate in such special trust funds.

Mr. McCutcheon testified that he had not sold any cotton to Mr. Hargrove; that he had sold to Mr. Rogers certain cotton for Mr. Hargrove, and along with it had sold seven bales of his own; that Mr. Rogers had given him a check, or a draft, for the whole amount due for both lots of cotton; that he indorsed and delivered this check, or draft, to Hargrove, who gave him in return his check for McCutcheon's share of the Rogers check, and for McCutcheon's commission for making the sale. This check was on a form upon which was printed "cotton account," but it did not go to pay Mr. McCutcheon for any cotton bought of him by Hargrove. How could it then impress Hargrove's account with a special trust for its payment?

The transaction with the Carolina Textile Corporation presents a claim for the application of the doctrine of special trust even more remote than the McCutcheon claim.

This concern had bought from Hargrove a certain lot of cotton, for which they paid him; it proved to be unsatisfactory for their uses; following their custom and agreement with him, they reshipped the cotton to him—the same cotton—and he returned their money to them by his check. How could a special trust in favor of this claimant be impressed upon a fund into which there is an utter absence of proof that one dollar of this money, or the proceeds of the sale of their cotton, went?

Mr. Brown, president of the Carolina Textile Corporation, on cross-examination testified as follows:

"Q. Did you not have an arrangement with Mr. Hargrove whereby you paid him for cotton and later, if you found it did not suit, after an examination, you rejected it and threw it back on him? A. Yes, had an agreement something of that kind."

It is true that this witness undertook to call this a sale by the corporation to Hargrove. It is patent that it was not a sale. When the corporation rejected the cotton the title reverted to Hargrove. They returned it to him; he returned to them, by his check, the money they had paid him for it. Unfortunately for them he died before they collected the check and his estate has proved to be insolvent.

We can find in this transaction nothing which creates a trust in the funds in the defendant bank in Hargrove's account, not a dollar of which has been proved to have derived from this transaction.

The Circuit Judge held that the Marion Bank was not entitled to charge back to the account of Hargrove the item of $3,000.00, which was a check drawn by Hargrove on the Dillon Bank, which he deposited with the Marion Bank and for which it gave him credit on his account, which check was dishonored, and was charged back to Hargrove's account. The Circuit Judge and respondent's counsel speak of this item as an overdraft. That definition is incorrect. It was a dishonored check for which the depositor had had credit in his account. The bank was within its rights when it charged it back. This question has recently been considered by this Court in the case of *E. S. Macomber & Co. v. Commercial Bank,* reported in 166 S. C., 236, 164 S. E., 596.

There it was held, upon the authority, *inter alia,* of the case of *Southern Stove Works v. Converse Sav. Bank,* 112 S. C., 230, 100 S. E., 75, 76, that: "When a check or draft is drawn and handed to the bank, the bank credits its cus-

tomer with that amount. If the draft, check, or item is not * * * paid, the bank has the right to deduct it from the customer's account."

It follows from this holding that since the respondents have no right to recover these funds from the bank, it was in rightful possession of them. It is established law that when checks or drafts are deposited in a bank and the depositor is given credit for the amount, the title to the item passes to the bank.

If the depositor is indebted to the bank, the bank has the right to offset the indebtedness by the deposit—unless there are conditions or agreements attending the deposit which preclude it. None such exist here. Hence the bank had the right to apply the balance of the funds in the account of Hargrove to the past-due note which he owed it.

The judgment of this Court is that the decree appealed from be reversed, that the complaint be dismissed, and the claim of the administrator for the funds be denied.

Mr. CHIEF JUSTICE BLEASE and Mr. JUSTICE STABLER and Mr. CIRCUIT JUDGE S. W. G. SHIPP, ACTING ASSOCIATE JUSTICE, concur.

Mr. JUSTICE CARTER dissents.

Mr. JUSTICE CARTER (dissenting) : This action by the plaintiffs, suing on behalf of themselves and all other persons in like situation who may come in and share in the costs and expenses of the suit, was commenced in the Court of Common Pleas for Dillon County, February 4, 1930, against the defendants, for the purpose of recovering the amount of certain checks alleged to have been drawn by J. N. Hargrove, deceased, upon Marion National Bank, a defendant herein, which checks the said bank refused to pay. Issues being joined, the case was referred by his Honor, Judge E. C. Dennis, to A. B. Jordan, master, to take the testimony and report the same to the Court. Thereafter, the matter was heard on the testimony taken before the master

by his Honor, Judge C. C. Featherstone, at Dillon, S. C., April, 1931. The decree of his Honor, Judge Featherstone, finding in favor of the plaintiffs as against both defendants and in favor of the defendant Marion National Bank, as against the defendant J. H. McLaurin, administrator of the estate of J. N. Hargrove, deceased, was filed May 2, 1931. From this decree both of the defendants have appealed to this Court.

The facts in the case are fully stated in the Circuit Judge's decree, and the law applicable thereto fully discussed. I am satisfied with the conclusion reached in said decree, and fully concur therein.

In my opinion all of the exceptions should be overruled and the decree of the Circuit Judge affirmed.

### Order on Petition for Rehearing

*Per curiam.*

The petition for rehearing does not seriously contest the statement that the complaint bases the right of the plaintiffs to recover from the bank upon the proposition that Hargrove's account in the bank was a special cotton account which was impressed with a trust in their favor. We are satisfied that there was no special cotton account and hence there was no error in our opinion thereabout.

But petitioners say that they are entitled to recover, not from the estate of Hargrove, the purchaser of their cotton, nor from the persons to whom Hargrove sold it, but from the bank, for the reason that Hargrove drew drafts upon the firms, Walker & Co. and Sprunt & Sons, to whom he shipped the cotton, the proceeds of which went into his account, in the bank—an account which we have found to be a *general,* not a *special cotton account*—that this was a cash transaction, and the title did not pass.

Strictly speaking this issue is not made by the complaint. It first appears as a serious element in the case in the Circuit decree. However, we prefer to consider it.

The principle of law is well settled that title to property, in a cash transaction, where payment is made by check which is dishonored, does not pass to the purchaser. The seller may repossess it if it has not passed into the hands of an innocent purchaser without notice. If it has so passed, he may recover the value of it from the purchaser, or from one who receives it from the purchaser with notice. The Circuit decree goes further than that, and holds that the proceeds of the drafts given by Hargrove upon the firms to whom he shipped the cotton may be followed in the hands of the bank which had cashed the drafts before they were paid by those upon whom they were made, and had placed the cash to the credit of Hargrove in his general account. It goes even further than that; it goes to the extent of holding that if the bank has paid out Hargrove's funds on checks drawn by him, and offset his indebtedness to it by application against his deposits, the plaintiffs may have recourse upon the general funds of the bank.

The Circuit decree cites Section 177, Cr. Code 1922, now Section 1282, Cr. Code 1932, as indicative of "the legislative mind" on this subject of sale of certain agricultural products and farm properties. The title of that section is: "Making Way with Produce before Paid for, Fraud." There is no question of fraud on the part of any one interested in the present transaction. We fail to see how that section applies to this case.

The authorities cited by petitioner's counsel in the argument in the hearing of the appeal in the case of *Young v. Harris-Cortner Co. et al.,* a Tennessee case reported in 152 Tenn., 15, 268 S. W., 125, 54 A. L. R., 516, and cases found in the annotation of that case, were also relied on in the Circuit decree. The main case in *Young v. Harris-Cortner Co..* turned on a Tennessee statute and is authority for the principle that the seller has an action for the repossession of his property, or he may sue the vendee for the

value thereof. This doctrine is recognized in this State, and followed when the facts warrant its application.

An analysis of all the other cases relied on reveals that they are differentiated from our case now under consideration. There is an apparent, but not real, resemblance to our case in that of *Lewis v. James McMahan & Co.*, 307 Mo., 552, 271 S. W., 779, cited in 54 A. L. R., 527 (annotation). There the bank was held liable because it had refused to pay 'the checks and had applied the money to its own debt, although it had full knowledge of the transaction and had then on hand the proceeds of the property sold. In the present case the checks were not presented to the bank until after it had paid Hargrove's check for $9,100.00 and had applied the balance of his account to his past-due note to it. Moreover, there is no evidence that the bank knew that the checks to plaintiff were outstanding. The Circuit decree assumes that the bank knew it because it assumes that the bank knew that that was Hargrove's way of conducting his cotton business. The history of his transactions with this bank, in another town some fifteen or twenty miles away and another bank in the town where Hargrove conducted his business, does not bear out this assumption.

When drafts are accepted by a bank and the amount thereof placed to the credit of the drawer, the drafts become the property of the bank. It is difficult to understand how the proceeds of those drafts could be recovered of the bank upon the doctrine that because Hargrove's checks to the plaintiffs were unpaid the title to the cotton never passed, and as the bank had collected drafts, which Hargrove the purchaser had drawn on the firms to which he consigned the cotton, the bank was responsible to the sellers. This is to make the bank pay twice; it paid for the drafts, now it is sought to make it pay for the cotton.

This is a hard case; one must sympathize with the plaintiffs, and the big hearted Judge who heard this case on circuit sympathized with them acutely. But, however com-

mendable it may be to feel for the losers in such transactions, cases cannot be decided by such considerations.

In the case of *Triplett v. City of Columbia*, 111 S. C., 7, 96 S. E., 675, 678, 1 A. L. R., 349, Mr. Justice Hydrick said: "Where an individual has suffered injury as the result of a wrong done, natural justice calls for some remedy, and the Courts have ever been alert to provide one; hence the boast of the law, which is often pressed upon the attention of Courts, that for every wrong there is a remedy. But there is another axiom of practical wisdom equally important to be observed—*hard cases make bad law. Not infrequently the hardship of a particular case leads to the strained, if not incorrect, application of sound principles to fit the facts, so as to afford a remedy; and, when the same principles are invoked in similar cases, it is discovered that they lead to results that are exceedingly inconvenient, if not so illogical that they cannot be justified on settled principles of legal liability.*" (Italics added.)

The petition for rehearing is denied.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM and MR. CIRCUIT JUDGE S. W. G. SHIPP, ACTING ASSOCIATE JUSTICE, concur.

MR. JUSTICE CARTER: I dissent.