[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JUL 06 2012

JOHN LEY
CLERK

No. 11-14318

D.C. Docket Nos. 1:09-md-02036-JLK ; 1:10-cv-20813-JLK

In Re: CHECKING ACCOUNT OVERDRAFT LITIGATION

MDL NO. 2036

LACY BARRAS,
on behalf of herself and all
others similarly situated,

Plaintiff - Appellee,

versus

BRANCH BANKING AND TRUST COMPANY,
a federally chartered thrift institution,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(July 6, 2012)

Before CARNES, BARKETT and BLACK, Circuit Judges.

BARKETT, Circuit Judge:

Branch Banking & Trust Company ("BB&T"), a commercial bank, appeals the denial of its motion to compel arbitration of a putative class action brought by Lacy Barras, a customer of BB&T. Barras alleged in her complaint on behalf of herself and the class she seeks to represent that BB&T charged her and charges others overdraft fees for payments from checking accounts even when the account contains sufficient funds to cover the payments. She also alleges that BB&T supplies inaccurate and misleading information about account balances, and fails to notify customers about changes to BB&T's policies for processing checking account transactions, thereby increasing overdraft charges assessed against BB&T customers.

Barras asserts claims under the North Carolina Unfair Trade Practices Act for unfair and deceptive trade practices, breach of contract, breach of the covenant of good faith and fair dealing, and unconscionability, and seeks to certify a class of BB&T account holders who were likewise charged allegedly inflated overdraft fees on their checking accounts.[1]

BB&T moved to compel arbitration of all of Barras's claims under 9 U.S.C.

_____

[1] This case was transferred from the Middle District of North Carolina to the Southern District of Florida by the Judicial Panel on Multidistrict Litigation.

2

§§ 3[2] and 4[3] pursuant to an arbitration provision contained in BB&T's Bank Services Agreement ("BSA"). In an order dated May 10, 2010, the district court denied BB&T's motion to compel arbitration, ruling that the arbitration agreement was unconscionable under South Carolina law and could not be enforced. Before this court decided BB&T's appeal from that order, the Supreme Court decided AT&T Mobility, LLC v. Concepcion, 131 S. Ct. 1740 (2011), wherein the Supreme Court held that § 2 of the FAA prohibited the invalidation of an arbitration agreement based on a state law prohibiting contractual waivers of class-based

---

[2] 9 U.S.C. § 3 provides, in relevant part,

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006).

[3] 9 U.S.C. § 4 provides, in relevant part,

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (2006).

3

arbitration and litigation. We then remanded the case to the district court for reconsideration in light of Concepcion.[4]

On remand, BB&T renewed its motion to compel arbitration. The district court denied the motion, ruling that BB&T had waived its right to submit the question of arbitrability to the arbitrator because BB&T had already submitted the issue of arbitrability to the district court, which had ruled against BB&T on that question, and BB&T had appealed that ruling to this court. The court also ruled that the mandatory arbitration provision was unconscionable because under another provision of the BSA, only BB&T could recover any costs and attorneys' fees resulting from arbitration regardless of whether BB&T prevailed or not, and BB&T could recover these fees by withdrawing them from Barras's account without notifying Barras.[5] BB&T appeals from that ruling, arguing (1) that the question of whether the arbitration provision is enforceable must be resolved by the arbitrator; (2) that the cost-and-fee-shifting provision in the agreement that the district court held unconscionable does not apply to the arbitration provision; (3) that Concepcion prohibits application of South Carolina's unconscionability doctrine to the arbitration provision; (4) that the cost-and-fee-shifting provision, in any event, is

---

[4] See Barras v. Branch Banking & Trust Co., 425 Fed. Appx. 827 (11th Cir. 2011).

[5] The district court ruled that the arbitration agreement is governed by South Carolina law. Neither party contests this ruling on appeal.

not unconscionable; and (5) that the cost-and-fee-shifting provision is severable from the arbitration provision. We evaluate each of BB&T's arguments in turn.

## I.

The BSA provides both parties a right to submit to arbitration "[a]ny claim or dispute ('Claim') . . . arising from or relating in any way to [Barras's] account, this Agreement, or any transaction conducted with the Bank or any of its affiliates." The "Claims" referred to "include Claims regarding the applicability of this provision or the validity of this or any prior agreement." BB&T first argues that, pursuant to this "delegation clause," the threshold issue of whether the arbitration provision is unenforceable because of the alleged unconscionability of the cost-and-fee-shifting provision should have been submitted to arbitration.

The district court determined that BB&T has waived its right to arbitrate the threshold issue of unconscionability. The district court based its conclusion on the fact that over a year prior, BB&T asked the district court to determine the question in its original motion to compel arbitration, and failed to move the court to allow an arbitrator to determine the unconscionability of the provision. Because Barras had incurred the expense of opposing the original motion as well as on appeal to this Court, the district court refused to allow BB&T to argue for the first time on remand that the arbitrator should determine the issue.

5

Notwithstanding that BB&T had already litigated this issue before the district court for over a year, BB&T argues that Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772 (2010), required the district court to submit the issue of enforceability to the arbitrator. We find this case inapplicable. The question of waiver was not before the Supreme Court in Rent-A-Center, as the defendant seeking arbitration in Rent-A-Center, unlike BB&T, argued consistently that this issue was assigned by agreement to the arbitrator. See 130 S. Ct. at 2775. In contrast, BB&T litigated its case for over a year without moving the district court to submit the threshold issue of enforceability to the arbitrator; rather, it asked the district court to hold that the arbitration agreement was enforceable. Accordingly, we cannot say that the district court erred in holding that BB&T had waived its right to arbitrate the threshold issue of unconscionability. See Hough v. Regions Fin. Corp., 672 F.3d 1224, 1228 (11th Cir. 2012) (holding that party waived its right to submit question of unconscionability to arbitrator by litigating that issue before the district court).

Because we find that the district court did not err in refusing to submit the question of unconscionability to the arbitrator, we must now turn to the district court's substantive rulings on: (1) whether the cost-and-fee-shifting provision applies to the arbitration provision; and (2) if so, whether the FAA preempts South Carolina's doctrine of unconscionability.

6

## II.

BB&T argues that the cost-and-fee-shifting provision does not apply to arbitration because the arbitration provision dictates that any arbitration under the BSA will be conducted according to a body of rules promulgated by the American Arbitration Association ("AAA"). Because the AAA rules include provisions pertaining to costs, BB&T argues these rules regarding costs must be deemed as the only ones applicable to arbitration.

However, the BSA also dictates the costs and fees allowable as a result of "any dispute" with Barras involving her bank account. The cost-and-fee-shifting provision provides, in relevant part:

> **COSTS, DAMAGES, AND ATTORNEYS' FEES.** You agree to be liable to the Bank for any loss, costs, or expenses, including, without limitation, reasonable attorneys' fees, the costs of litigation, and the costs to prepare or respond to subpoenas, depositions, child support enforcement matters, or other discovery that the Bank incurs as a result of any dispute involving your account. You authorize the Bank to deduct any such loss, costs, or expenses from your account without prior notice to you.

Under South Carolina law,[6] "[i]f [a] contract's language is clear and unambiguous, the language alone determines the contract's force and effect." Schulmeyer v. State Farm Fire & Cas. Co, 579 S.E.2d 132, 134 (S.C. 2003). A

---

[6] Arbitration agreements "are . . . interpreted according to ordinary state-law rules of contract construction." Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1061 (11th

reviewing court "must consider the contract in its entirety and employ a construction that gives effect to the whole instrument and to each of its various parts and provisions." Hardee v. Hardee, 558 S.E.2d 264, 267 (S.C. App. 2001) (internal quotation marks omitted).[7]

According to the plain language of the BSA's cost-and-fee-shifting provision, that provision unambiguously requires Barras to bear "any loss, costs, or expenses . . . that the Bank incurs as a result of any dispute involving [Barras's] account." The plain language applies the cost-and-fee-shifting provision to arbitration, as arbitration is a type of "dispute," and the broad language of the provision contains no limitation that would otherwise prevent its application to arbitration. See Schulmeyer, 579 S.E.2d at 134. Moreover, "giv[ing] effect to the whole instrument and to each of its various parts and provisions" requires us to interpret the arbitration provision and cost-and-fee-shifting provision as capable of operating in tandem and allowing BB&T to invoke its contractual cost-and-fee-shifting rights independently of the arbitration provision. See Hardee,

---

Cir. 1998).

[7] "Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law." Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000).

8

558 S.E.2d at 267.[8]  We find no error in the district court's conclusion that the cost-and-fee-shifting provision is applicable to costs arising from arbitration.

## III.

Notwithstanding that the district court found the arbitration clause unconscionable, BB&T argues that, under Concepcion, the FAA preempts application of South Carolina's unconscionablity doctrine to the arbitration provision in the BSA.  Barras argues that although the FAA requires that "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable," it permits arbitration agreements to be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (2006) (emphasis added).  The question, then, is whether a determination that the relevant written provision here is unenforceable because it is unconscionable is a

---

[8] BB&T also claims that the cost-and-fee-shifting provision in the BSA is unenforceable because BB&T claims to have voluntarily waived its right to invoke the cost-and-fee-shifting provision in regard to arbitration costs.  However, BB&T's conduct in purportedly waiving the cost-and-fee-shifting provision is relevant to the issue of contract interpretation only if the contract itself is ambiguous.  See Jordan v. Sec. Group, Inc., 428 S.E.2d 705, 707 (S.C. 1993) ("Resort to construction by a party is only done when the contract is ambiguous.").  Here, we find no ambiguity in the explicit language of the contract making Barras liable to bear the full costs of "any dispute."  Moreover, to the extent BB&T argues that its purported waiver of its contractual right under the cost-and-fee-shifting clause is binding by virtue of the BSA's explicit waiver provision, this argument is unavailing because the waiver provision expressly requires that any waiver "shall be in writing and signed by the parties."  BB&T does not argue, nor does the record reflect, that any written waiver exists that conforms to the requirement of this provision.

9

"ground[]" that "exist[s] at law or in equity for the revocation of any contract" in South Carolina.  Id.

In Concepcion, the Supreme Court held that § 2 of the FAA prohibits the invalidation of an arbitration agreement according to a state law that made contractual waivers of class-wide arbitration unenforceable.  See 131 S. Ct. at 1753.  The Court reasoned that, by requiring class-wide arbitration in instances where contracting parties had agreed only to individual arbitration, the state law increased the procedural complexity of any arbitration proceeding that occurred between the parties.  See id. at 1751.  The Court held that this feature of class-wide arbitration was inconsistent with the procedural flexibility and informality of individual arbitration.  See id.  In addition, the Court noted that class-wide arbitrations typically produce larger awards than individual arbitrations and that the FAA permits only limited review of arbitration awards.  See id. at 1752.  The Court held that this feature of class-wide arbitration conflicted with the degree of risk assumed by the defendant in entering into an arbitration agreement providing for only individual arbitration[9] as well as with Congress's intentions in enacting the FAA.  See id. ("We find it hard to believe that defendants would bet

_____

[9] Specifically, the Court reasoned that the combination of larger damages awards with a more limited scope of judicial review increases the risk that defendants will be held liable for a large award without having an opportunity to correct any error in the arbitrator's decision.  See Concepcion, 131 S. Ct. at 1752.

10

the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.").

Taking these features of class-wide arbitration into account, the Court concluded that the state law compelling class-wide arbitration necessarily "interfere[d] with fundamental attributes of arbitration" to the degree that it "create[d] a scheme inconsistent with the FAA." Id. at 1748. Accordingly, the Court held that the state law constituted "'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" and was preempted by the FAA. Id. at 1753 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

Although Concepcion held that the state law at issue was preempted, it made clear that there are instances wherein a state law may invalidate an arbitration agreement without being preempted by the FAA. Indeed, the phrase "save upon such grounds as exist at law or in equity for the revocation of any contract" in § 2 must have meaning. 9 U.S.C. § 2 (2006) (emphasis added). Concepcion affirmed that, under this "savings clause" of § 2, "generally applicable contract defenses" provided by state law "such as fraud, duress, or unconscionability" are not preempted by the FAA. Concepcion, 131 S. Ct. at 1746. Thus, although arbitration agreements may not be singled out for unfavorable treatment, see Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996), "[l]ike other

11

contracts . . . they may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability," Rent-A-Center, 130 S. Ct. at 2776 (internal quotation marks omitted). After Concepcion, we have stated that "generally applicable contract defenses" that challenge "defects in the making of the arbitration agreement" and that "do not apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue" are "not affected by [Concepcion]." Cmty. State Bank v. Strong, 651 F.3d 1241, 1267, 1267 n.28 (11th Cir. 2011) (internal quotation marks and ellipsis omitted ).

Accordingly, in light of Concepcion, we must determine whether South Carolina's doctrine of unconscionability is a "generally applicable contract defense[]" permitted by § 2 of the FAA, 131 S. Ct. at 1746, or whether it necessarily "interferes with fundamental attributes of arbitration" to the degree that it "creates a scheme inconsistent with the FAA," like the ban on collective-action waivers in Concepcion, id. at 1748.

Unlike the state law in Concepcion that was "applied in a fashion that disfavors arbitration" due to its provisions requiring class-wide as opposed to individual arbitration proceedings, id. at 1747, South Carolina's doctrine of unconscionability applies to arbitration and to other agreements according to the same basic criteria, and these criteria do not disproportionately impact arbitration

agreements.[10] Compare, e.g., Carolina Care Plan, Inc. v. United HealthCare Servs., 606 S.E.2d 752, 757—59 (S.C. 2004) (arbitration agreement), with, e.g., Hardee v. Hardee, 585 S.E.2d 501, 505 (S.C. 2003) (pre-nuptial agreement), Jones Leasing, Inc. v. Gene Phillips & Assocs., 318 S.E.2d 31, 33—34 (S.C. Ct. App. 1984) (automobile lease agreement), and S.C. Code Ann. § 36-2-302 (codifying applicability of unconscionability doctrine to contracts for the sale of goods). Accordingly, unlike California's collective-action-waiver rule, South Carolina's unconscionability doctrine does not "apply only to arbitration or . . . derive [its] meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 131 S. Ct. at 1746.

South Carolina's unconscionability doctrine is also unlike the collective-action-waiver rule in Concepcion because it does not interfere with the procedural informality that Concepcion recognized as the "principal advantage of arbitration." Id. at 1751. South Carolina's unconscionability doctrine determines

_____

[10] South Carolina also inquires whether an arbitration agreement "is geared towards achieving an unbiased decision by a neutral decision-maker," Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 668 (S.C. 2007); however, we do not find that this aspect of South Carolina law changes our analysis because it is fully consistent with the goals of arbitration embodied by the FAA, which also seeks to ensure the impartiality of the arbitration proceeding. See Concepcion, 131 S. Ct. at 1752 (noting that FAA permits vacatur of an arbitral award where the arbitrators were impartial); 9 U.S.C. § 10(a)(1)—(4); cf. Murray v. UFCW Int'l, Local 400, 289 F.3d 297, 303 (4th Cir. 2002) ("By agreeing to arbitration in lieu of litigation, the parties . . . do not forego their right to have their dispute fairly resolved by an impartial third party."). There is no evidence that the South Carolina courts use this criterion to "singl[e] out arbitration provisions for suspect status." Doctor's Assocs., 517 U.S. at 687.

13

enforceability of an agreement not by whether it includes procedures that are inconsistent with arbitration's informality, but by examining the one-sidedness of its provisions and the circumstances in which it was formed. See Carolina Care, 606 S.E.2d at 757 (determining unconscionability with regard to the "absence of meaningful choice" on the part of one party to the agreement and "oppressive" contractual terms). Moreover, because an agreement can be held unconscionable under South Carolina law only if the process of contract formation is determined to have been flawed, South Carolina's unconscionability doctrine is one that is concerned with defects in the process of contract formation.[11] The Supreme Court has consistently recognized this type of contract defense as valid under 9 U.S.C. § 2, and has repeatedly identified unconscionability as one of the general principles of contract law that, if applied impartially, may be applied to arbitration agreements under § 2. See Concepcion, 131 S. Ct. 1753, 1754—55, 1755 n. (Thomas, J., concurring) ("[E]very specific contract defense that the Court has acknowledged is applicable under § 2 relates to contract formation."); Doctor's Assocs., 517 U.S. at 687 (listing "fraud, duress, and unconscionability," as examples of defenses

---

[11] Although the analysis of unconscionability scrutinizes both the circumstances of the making of the agreement and the substantive terms of the agreement itself, the agreement cannot be invalidated unless it is determined to be procedurally flawed. See Simpson, 644 S.E.2d at 669 ("[W]e determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms.") (emphasis added).

14

permitted under § 2); see also Strong, 651 F.3d at 1267 n.28 ("The ability of such [procedural] contractual defects to invalidate arbitration agreements is not affected by [Concepcion].").  Also unlike California's collective-action rule, South Carolina's unconscionability doctrine does not "greatly increase[] risks to defendants" by providing for aggregate settlement of numerous claims in a forum that does not allow for plenary judicial review, see Concepion, 131 S. Ct. at 1752; quite simply, South Carolina's doctrine neither allows nor prohibits the aggregation of claims at all.

Moreover, unlike California's collective-action-waiver rule, which the Supreme Court noted was used by California courts as a vehicle for "judicial hostility towards arbitration," id. at 1747; see id. (citing law review articles discussing application of the waiver rule to arbitration agreements by California courts), South Carolina's unconscionability doctrine is not "applied in a fashion that disfavors arbitration" by courts in South Carolina, see id.  Instead, South Carolina courts consistently emphasize that the FAA "precludes the States from singling out arbitration clauses for unfavorable treatment."  Lackey v. Green Tree Fin. Corp., 498 S.E.2d 898, 904 (S.C. Ct. App. 1998); see also Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 364 (S.C. 2001) ("[S]tate law that places arbitration clauses on an unequal footing with contracts generally . . . is preempted if the FAA

15

applies."). Indeed, South Carolina courts have frequently upheld arbitration clauses against unconscionability challenges, see, e.g., Carolina Care, 606 S.E.2d at 757—58; Munoz, 542 S.C. at 364; Lackey, 498 S.E.2d at 902—905, and although they have also invalidated arbitration agreements on grounds of unconscionability,[12] unlike in Concepcion, there is no indication that they have done so in regard to arbitration at a greater rate than other types of agreements, see 131 S. Ct. at 1747 ("[I]t is worth noting that California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts.").

For all of the foregoing reasons, we conclude that South Carolina's unconscionability doctrine does not "interfere[] with fundamental attributes of arbitration" as identified by the Supreme Court, see id. at 1748, and is among the "generally applicable contract defenses" that apply to arbitration agreements under the savings clause of 9 U.S.C. § 2, see id. at 1746. Therefore, South Carolina's unconscionability doctrine is not preempted by the FAA in its application to arbitration agreements.

Because we reach this conclusion, we next address whether the arbitration agreement embodied in the BSA is unconscionable under South Carolina law.

IV.

---

[12] See Simpson, 644 S.E.2d at 668.

16

BB&T argues that the district court erred in determining that the cost-and-fee-shifting provision in its agreement with Barras is unconscionable. For an agreement to be unconscionable under South Carolina law, the agreement must involve both an "absence of meaningful choice on the part of one party due to one-sided contract provisions," and "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Simpson, 644 S.E.2d at 668. In considering the first element of this analysis—whether Barras lacked a "meaningful choice" in agreeing to the BSA—we must evaluate

> the relative disparity in the parties' bargaining power; the parties' relative sophistication; the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

Herron, 693 S.E.2d at 398; accord Simpson, 644 S.E. 2d at 669.

Applying this analysis, we find the last two factors—whether there is an element of surprise and the conspicuousness of the clause—weigh heavily in favor of concluding Barras lacked a meaningful choice in agreeing to the provision.[13]

---

[13] We note that although the BSA meets the definition of an adhesive contract under South Carolina law, see Munoz, 542 S.E.2d at 365 (defining adhesion contracts as those offered on a non-negotiable basis), adhesion contracts are not "per se unconscionable" under South Carolina law. Simpson, 644 S.E.2d at 669. Instead, a finding that a contract is adhesive "is merely the beginning point of the analysis" of unconscionability. Id.

See Simpson, 644 S.E.2d at 669. The arbitration provision itself is conspicuous, as it appears prominently on the first page of the BSA, is clearly labeled "arbitration agreement," and portions of the provision are printed in bold, capital letters, and in larger font than the surrounding text. See Herron, 693 S.E.2d at 398 (holding that arbitration agreement was conspicuous where it appeared on a separate, one-page document signed by the consumer and was clearly labeled). However, the specific clause that Barras objects to—the cost-and-fee-shifting provision—appears on page fourteen of the BSA, in an entirely separate provision. According to the plain language of the cost-and-fee-shifting provision, supra at 7, BB&T is entitled to recover all of its expenses incurred in the course of any dispute with Barras, regardless of whether BB&T is the prevailing party, or whether BB&T has acted illegally or improperly. The arbitration provision on page one nowhere references the fee-recovery provision on page fourteen; instead, the arbitration provision appears to be a comprehensive statement of all rules governing an arbitration proceeding. Indeed, the provision is particularly inconspicuous and surprising when it is considered in light of its consequences: entitling BB&T to unilaterally claim a right to payment for "any loss, costs, or expenses" incurred in "any dispute" with Barras, regardless of the outcome of that dispute. See Simpson, 644 S.E.2d at 670 (finding placement of challenged clause inconspicuous "in light of its

18

consequences" of waiving the plaintiff's entitlement to certain remedies).[14]

Although "a person who can read is bound to read an agreement before signing it," Munoz, 542 S.E.2d at 365, here, the placement of the fee-recovery provision is such that, even on a thorough reading of the BSA, a party might not fully understand or realize its applicability to arbitration. Accordingly, because the cost-and-fee-shifting provision appears in an entirely separate portion of the BSA, nothing in the arbitration clause notifies the reader of its existence, and the arbitration clause itself suggests that it is comprehensive with regard to fees and expenses, we conclude that the first element of Barras's unconscionability claim is satisfied under an application of South Carolina law.

The second element of unconscionability is established if the challenged contract includes "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Simpson, 644 S.E.2d at 668. Whereas the first element of unconscionability considers the

---

[14] We do not give extensive consideration to the two remaining factors identified by the South Carolina Supreme Court, "the nature of the injuries suffered by the plaintiff" and "whether the plaintiff is a substantial business concern," because no case has explained the role of either of these factors in the analysis of unconscionability. Cf. Aiken v. World Fin. Corp. of S.C., 644 S.E.2d 705, 709 n. 4 (S.C. 2007) (declining to address whether "any arbitration agreement purporting to apply to . . . outrageous and unforeseen tortious acts is unconscionable" in light of holding that the acts at issue were outside the scope of the arbitration agreement). Notwithstanding this ambiguity, the fact that Barras's injuries in this case were economic as opposed to physical or emotional does not independently bar her unconscionability claim here. See Simpson, 644 S.E.2d at 670 (holding that plaintiff lacked a meaningful choice whether to agree to arbitrate claims where plaintiff's claimed injuries were solely economic).

circumstances surrounding formation of the contract, this second element

> relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as . . . provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

8 Richard A. Lord, Williston on Contracts § 18:10 (4th ed. 2001).

According to the plain language of the BSA's cost-and-fee-shifting provision, this provision may be invoked to force Barras to pay BB&T's costs of arbitration regardless of whether BB&T prevails in the dispute.[15] See supra at 7. By making Barras responsible for BB&T's costs even if she prevails on her claim, the cost-and-fee-shifting provision contravenes basic expectations that attorney's fees and costs generally are not recoverable by a non-prevailing party. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983) (describing the "established principle that a successful party need not pay its unsuccessful adversary's fees" as "rooted . . . in intuitive notions of fairness"). If, as the Supreme Court observed in Ruckelshaus, "ordinary conceptions of just returns reject the idea that a party who wrongly charges someone with violations of the law should be able to force that defendant to

---

[15] The fee-recovery provision in BB&T's agreement with Barras is therefore fundamentally different from the contract terms at issue in Hough v. Regions Financial Corp., 672 F.3d 1224 (11th Cir. 2012), which permitted the defendant bank, Regions Financial, to recover its costs and expenses arising from "'any action or arbitration'" only if "'Regions is the prevailing party'" in that action or arbitration. Id. at 1227 (quoting from the relevant deposit agreement).

pay the costs of the wholly unsuccessful suit against it," id., the notion that a claimant who prevails can be forced to pay the respondent's expenses incurred in attempting to avoid liability for its proven wrongdoing also contravenes basic expectations derived from "intuitive notions of fairness," id.[16] The expectation that a prevailing party need not pay the other party's costs is "widely manifested in numerous different contexts," id., including in the determination of eligibility for attorneys' fees under South Carolina law, see Anderson v. Tolbert, 473 S.E.2d 456, 459 (S.C. Ct. App. 1996) (reversing award of attorneys' fees in part because award was not justified by the extent of positive results obtained by the attorney); see generally Collins v. Collins, 122 S.E.2d 1, 5 (S.C. 1961) (predicating eligibility for attorneys' fees in part on the basis of the "beneficial result accomplished"). This basic assumption is also applicable in the context of arbitration, which contemplates awarding fees and costs, if at all, either equally among the parties, or only to the party who prevails. See, e.g., 2 Martin Domke et al., Domke on Commercial

---

[16] To the extent that one-way fee shifting provisions are predictable in dispute resolution, they generally are adopted in situations where an exception to the normal practice of requiring parties to pay their own costs is justified by, for example, the interest in financing particular types of disputes, see Harold J. Krent, Explaining One-Way Fee Shifting, 79 Va. L. Rev. 2039, 2039-45 (1993) (reviewing and discussing justifications for pro-claimant cost-and-fee-shifting statutes such as the Equal Access to Justice Act), or the interest in deterring frivolous claims, see Fed. R. Civ. P. 11. However, the circumstances justifying an exception do not apply here, as unconditionally shifting fees in favor of the respondent does not assist in financing the claimant's case, nor is the one-way award of fees predicated upon a finding that the claimant's case is meritless—indeed, according to the terms of the BSA, costs would be awarded to BB&T even if Barras proves her position to be meritorious.

Arbitration § 35.7 (3d ed. 2010) ("Under the terms of the submission, the parties may authorize the arbitrators to award costs of the arbitration equally among the parties, or to the prevailing party.").[17]   Thus, the BSA's unconditional cost-and-fee-shifting provision contradicts the well-established expectation that losing parties normally are not entitled to recover costs and fees from winning parties.  See Ruckelshaus, 463 U.S. at 684—85.

The unconditional cost-and-fee-shifting provision further negates reasonable expectations of the non-drafting contractual party because a consumer reasonably relying on the plain language of the arbitration provision would understand that her liability for the arbitration costs and expenses would be limited according to the American Arbitration Association rules referenced therein.[18]   Accordingly, the unconditional cost-and-fee shifting provision, which provides entirely different rules regarding apportionment of arbitration costs, negates Barras's reasonable expectations derived from the BSA itself.   Moreover, the cost-and-fee shifting provision distorts the fairness and reliability of the arbitration proceeding by forcing

---

[17] Because arbitration is a matter of private contract, parties are of course free to agree that one party will bear the other party's costs and attorneys' fees, and, as in any contract, the parties are bound to this agreement so long as it is enforceable—which is the question that we are called upon to decide here.  See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257 (1975) (discussing the "general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees") (emphasis added).

[18] See American Arbitration Association, Consumer-Related Disputes Supplementary

Barras to fund any loss, cost, or expense incurred by BB&T in arbitration, regardless of the merit of her claim against BB&T, and regardless of whether she prevails in arbitration. These provisions of the unconditional cost-and-fee-shifting provision are not "geared towards achieving an unbiased decision by a neutral decision-maker." Simpson, 644 S.E.2d at 668.

Given these features of the cost-and-fee-shifting provision, we conclude that the terms of this provision allowing BB&T, and only BB&T, to recover "any loss, costs, or expenses" arising from "any dispute" with Barras, regardless of the outcome of the dispute, are "so oppressive that no reasonable person would make them and no fair and honest person would accept them." Id. Barras has therefore satisfied the second element of South Carolina's unconscionability doctrine. See id.[19]

---

Procedures 8 (Sept. 15, 2005), available at www.adr.org.

[19] Barras also argues, as a separate ground of unconscionability, that the cost-and-fee-shifting provision is unconscionable insofar as it permits BB&T to withdraw the amount of any costs incurred as a result of a dispute with Barras from Barras's checking account without giving Barras notice before making the withdrawal. However, under South Carolina law, a bank holds title to funds deposited in a general checking account, and may contract with the owner of the account to automatically deduct funds to cover debts owed to the bank by the account-holder without giving prior notice of the withdrawal. See, e.g., Lee v. Marion Nat'l Bank, 166 S.E. 148, 160 (S.C. 1932) ("If the depositor is indebted to the bank, the bank has the right to offset the indebtedness by the deposit . . . ."); Richardson's Rests., Inc. v. The Nat'l Bank of South Carolina, 403 S.E.2d 669, 672 (S.C. Ct. App. 1991) (upholding bank's contractual right to withdraw funds from account to cover bank charges). Here, the fee-recovery provision in the BSA creates a debt owed by Barras for BB&T's costs incurred in resolving a dispute concerning Barras's account, and the withdrawal provision merely vests the bank with a contractual right to

## V.

Having determined that the cost-and-fee-shifting provision is unconscionable and unenforceable as written under South Carolina law, we turn next to the question of what the remedy should be. BB&T argues that the cost-and-fee-shifting provision should be severed from the BSA pursuant to the terms of the BSA providing that "[i]f any portion of this arbitration provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration provision or Agreement[.]" Barras responds that BB&T implicitly waived its right to enforce the severability clause of the BSA by failing to raise this argument in its original memorandum and reply in support of its motion to compel arbitration.

We need not decide whether BB&T waived its contractual right to enforce the arbitration provision's severability clause because under South Carolina law, "[i]f a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to avoid any unconscionable result." Simpson, 644 S.E.2d at 668; accord Herron, 693 S.E.2d at 397; see also Restatement (Second) of Contracts § 208 cmt. g (1981) ("Where a term rather than the entire contract is

---

satisfy that debt by deducting an equivalent amount from Barras's account. Because South Carolina law expressly allows BB&T to make this deduction, the BSA's provision giving BB&T the right to do so is not unconscionable under South Carolina law.

24

unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term."). Thus, even if Barras were correct that BB&T had waived its contractual right in the severability provision, a question we do not decide, South Carolina law still would permit us to "limit the application" of the cost-and-fee-shifting provision. See Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1032 (11th Cir. 2003) (stating that whether a severability provision in an arbitration agreement "is to be given effect is a question of state law").

One term of a contract may be voided without also invalidating another provision when the two provisions are "not necessarily dependent upon each other, nor is it intended by the parties that they shall be." Columbia Architectural Group, Inc. v. Barker, 266 S.E.2d 428, 429 (S.C. 1980) (internal quotation marks omitted). The arbitration provision contained in the BSA is capable of operating independently of the unconscionable cost-and-fee-shifting provision because the arbitration provision incorporates rules promulgated by the American Arbitration Association that govern all aspects of an arbitration proceeding, including the apportionment of costs. These rules operate wholly independently of the cost-and-fee-shifting provision and would not be impaired by invalidating the cost-and-fee-shifting provision. Thus, the cost-and-fee-shifting provision does not "pervade[] the arbitration agreement" such that enforcing the arbitration provision

25

without the cost-and-fee-shifting provision would be impossible or would render the arbitration provision ineffectual. See Simpson, 644 S.E.2d at 673. Further, the fact that the arbitration provision and the unconditional cost-and-fee-shifting provision are located in entirely separate portions of the contract and that the arbitration provision makes no reference to the other provision provides further evidence that the parties intended them to be capable of operating independently of each other. Accordingly, we conclude that the unenforceable cost-and-fee-shifting provision is severable from the arbitration provision, and the invalidity of that provision does not affect the arbitration provision. See id. at 668 (permitting court to "limit [the] application" of an unconscionable contract provision "so as to avoid any unconscionable result").[20]

**REVERSED** and **REMANDED** with instructions to compel arbitration.

---

[20] We reject Barras's alternative ground for affirmance, that a purported moratorium on conducting consumer-related disputes by the AAA renders her arbitration clause unenforceable, because 9 U.S.C. § 5 establishes a procedure for appointing a replacement arbitrator "if for any . . . reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire." 9 U.S.C. § 5 (2006); see Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). Moreover, although the arbitration provision does not allow Barras to obtain reimbursement for an expert witness, this feature of the arbitration provision does not render it unconscionable because the arbitration provision itself is conspicuous and not procedurally unconscionable. See supra at 17-18. We also reject Barras's remaining alternative arguments because they were not adequately presented in the district court. See Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1152 (11th Cir. 2011).